# EXHIBIT E
## Part I

# O'HAGAN
# SPENCER
### LLC

Patrick J. Keating
312-422-6135 – Direct
pkeating@ohaganspencer.com – E-mail

August 20, 2009

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606

Re: **Great West Casualty v. Volvo**
Case No.: 2008-CV-2872 (US District Court, No. Dist. of IL)
Our File No.: 20297-PJK

Dear Counsel:

We are writing with respect to your client's responses to our various written discovery requests. We believe that by and large, the responses, in their current form, are inadequate and not in keeping with the spirit or letter of the Federal Rules of Civil Procedure.

We have been loath to involve the Court directly in any discovery disputes in the hope that they can be resolved, in whole or at least in part, in an amicable fashion. Therefore, before we engage in motion practice, we would like to set up a conference, either in person or by telephone, to meet and confer under Rule 37(a)(1).

We know that you have suggested that certain areas of discovery can be avoided if we can agree to an appropriate stipulation regarding whether the Volvo Truck/engine at issue had the "defect" (to use our term) or "issue" referenced in your product recall no. RVXX0601. We are certainly interested in limiting discovery to only that which is necessary. However, we have not yet heard any detailed proposal of what Volvo trucks would be willing to stipulate to, and what area(s) of discovery it believes would no longer be necessary in light of a given stipulation or stipulations.

Our position is that, as it is your client that seeks to reduce the cost and burdens of complying with discovery obligations by way of stipulation, it makes sense that the initial proposal come from your office. This is the impasse to which we referred before Judge Lefkow. However, in order to move forward, we would suggest as a stipulation that Volvo Trucks, admit, without qualification or reservation, Plaintiff's original requests to admit Number 1 and Number 4. This could, of course, reduce discovery into the design and manufacture of the engine (specifically the parts at issue) and the design of

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 2 of 44

the engine compartment and installation or lack of heat shielding in the subject truck. We are happy to discuss such a stipulation and related agreement to limit discovery, and we will consider any written proposal you may make regarding stipulations. Obviously, the broader a stipulation your client is willing to enter into, the less discovery is needed. However, we cannot, consistent with our own obligation to zealously represent our client, agree to limit any discovery which could lend to the discovery which could lead to the discovery of admissible evidence on the remaining issues to be tried.

However, even assuming that we can come to some agreement, there would still be many areas of discovery where we believe your client has not fulfilled its obligations. These are set forth in more detail below, in the hope that our Rule 37 conference will be maximally productive.

We expect to address each of the concerns below in the Rule 37 conference. We would propose to adhere more or less to the schedule outlined in our Motion to Revise the Scheduling Order; in which we proposed to conduct any Rule 37 conference by August 21, 2009 as this letter has gone out a few days later than planned. If you wish to submit a written response before the conference, I would request you send it a day before the conference.

Please let us know your availability for a Rule 37 conference.

## VOLVO'S June 1, 2009 RESPONSES TO PLAINTIFF'S INTERROGATORIES

1. Identify all Volvo employees responsible for the design of the engine and engine compartment for the Subject Truck.

**ANSWER:** **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 1 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is overbroad, and is unduly burdensome. Without waiving said objections, the engine in the Truck was designed by employees of Volvo Powertrain AB. Volvo Trucks is unaware of the specific persons involved in its design. The engine installation was approved by Jeff Peddycord.**

COMMENT: Great West requests that Volvo provide the address for Volvo Powertrain AB. Additionally, Great West requests that Volvo provide the job title for Jeff Peddycord and his current contact information.

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 3 of 44



2.    Identify all component part manufacturers for the component parts of

the engine and engine compartment for the Subject Truck.

**ANSWER:    In addition to its general objections, Volvo Trucks objects to Interrogatory No. 2 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is overbroad, and is unduly burdensome. Without waiving said objections, the EGR tubes and tube clamps were manufactured by Autotube AB, Varberg, Sweden.**

COMMENT:    Great West requests that Volvo provide address and contact information from Autotube AB.

3.    Identify the manufacturer of the heat shield described in Safety Recall

Notice RVXX0601.

**ANSWER:    In addition to its general objections, Volvo Trucks objects to Interrogatory No. 3 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, and is vague and ambiguous. Interrogatory No. 3 seeks irrelevant information because Chicago Logistics did not take the Truck to a Volvo Parts and Service Center to have the heat shield described in Safety Recall Notice RVXX0601 installed in the Truck.**

COMMENT:    Great West has not answered Interrogatory Number 3. The fact that the heat shield was not installed in the Subject Truck is not the determining factor of whether the information sought is relevant to this litigation. Great West requests that Volvo answer the Interrogatory.

4.    How long had the engine design for the engine that was installed in

the Subject Truck been in use?

**ANSWER:    In addition to its general objections, Volvo Trucks objects to Interrogatory No. 4 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, and is vague and ambiguous. Without waiving said objections, the Volvo VED12D engine was introduced into the North American market in October/November 2002.**

V 12D →

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 4 of 44

COMMENT:    Volvo's response does not identify how long the engine design for the engine installed in the Subject Truck has been in use. Rather, Volvo only states that the engine was introduced in the North American market in October/November 2002. Great West requests Volvo to answer the Interrogatory as asked and not merely to provide the information Volvo chooses to provide. To clarify, please treat "in use" as meaning in service and for sale anywhere in the world.

5.    Identify any and all claims and/or lawsuits relating to the safety defect described in

Safety Recall RVXX0601 filed prior to the February 2006 Recall Notice.

ANSWER:    **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 5 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is overbroad, and is unduly burdensome.**

COMMENT:    Volvo does not answer Interrogatory Number 5. The information requested in Interrogatory Number 5 is certainly relevant to this litigation. The number and dates of all claims and lawsuits known to Volvo is relevant on its own and can lead to the discovery of admissible evidence. This Interrogatory seeks, among other things, to obtain information known to Volvo regarding the seriousness of the defect prior to issuing the February 2006 recall notice. Information known to Volvo prior to the issuance of the February 2006 recall notice certainly is relevant when evaluating the adequacy of language ultimately contained in the Recall Notice. Presumably, this information was recorded by Volvo or one of its subsidiaries of Volvo and should not be overly burdensome to produce. Great West requests that Volvo answer the Interrogatory.

6.    Identify any and all claims and/or lawsuits relating to the safety defect

described in Safety Recall RVXXO601 filed since the February 2006 Recall Notice.

ANSWER:    **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 6 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is overbroad, and is unduly burdensome.**

COMMENT:    Please see our comments to Interrogatory Number 5. Additionally, any claims and/or lawsuits filed since the February 2006 Recall Notice was issued is relevant as such information would provide insight as to the continuing problem presented by the defect. Such information would identify claims filed by owners who experienced a truck fire after the

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 5 of 44

February 2006 Recall Notice was issued but before the necessary repairs were made to the truck. Information known to Volvo after the issuance of the February 2006 Recall Notice is relevant when evaluating, for example, the adequacy of the language contained in the September 2006 Recall Notice. Great West requests that Volvo answer the Interrogatory.

7.      Identify when Volvo first learned that its trucks were experiencing engine fires as addressed in Safety Recall Notice RVXX0601.

**ANSWER:**      **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 7 to the extent that it is vague and ambiguous. Without waiving said objections, Regulatory Affairs published preliminary conclusions that a safety related defect may exist in regard to certain EGR pipes on January 20, 2006. Volvo Trucks made the determination that the issue described in Safety Recall Notice RVXX0601 existed on January 25, 2006.**

COMMENT:      Volvo does not answer the question posed in Interrogatory Number 7. Volvo does not identify when Volvo learned that its trucks were first experiencing engine fires as addressed in the Safety Recall. The date that Volvo first learned that Volvo trucks were experiencing engine fires is relevant to this litigation as this date would be the latest date that Volvo would have been put on notice that a defect may exist in the engine. Great West requests that Volvo answer the Interrogatory as asked and not to provide the information Volvo chooses to provide.

8.      Identify the number of Volvo VHD, VNL, and VNM model vehicles manufactured with a Volvo D12 engine from November 2002 to January 2006, which were reported to Volvo to have experienced an engine fire as described in Safety Recall Notice RVXX0601.

**ANSWER:**      **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 8 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is overbroad, and is vague and ambiguous.**

COMMENT:      Volvo does not answer Interrogatory Number 8. The number of truck fires reported to Volvo is relevant to this litigation. Such information may show, for example, what Volvo knew about the likelihood of an engine fire occurring. Additionally, it would show what information Volvo

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 6 of 44

possessed about the likelihood of an engine fire prior to the issuance of the February 2006 Recall Notice. In an attempt to limit the scope of this request, Great West seeks the requested information from October/November 2002 to January 25, 2006. Great West requests that Volvo answer the Interrogatory.

9.   Identify in detail, when and how Volvo first learned of the safety defect described in Safety Recall RVXX0601.

**ANSWER:** **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 9 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, and is unduly burdensome. Without waiving said objections, see Answer to Interrogatory No. 7.**

COMMENT:   Volvo does not answer the question posed in Interrogatory Number 9. Great West did not ask when Regulatory Affairs published its preliminary finding or when Volvo decided that a defect existed. Great West requested that Volvo provide when it first learned of the safety defect described in Safety Recall RVXX0601. Is Volvo stating that it first learned that of the safety defect described in Safety Recall RVXX0601 when Regulatory Affairs published its preliminary findings? If not, Great West requests that Volvo answer the Interrogatory as asked and not to provide the information Volvo chooses to provide.

10.   Describe with specificity each and every step Volvo took to correct the safety defect described in Safety Recall RVXX0601.

**ANSWER:** **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 10 to the extent is vague and ambiguous. Without waiving said objections, in addition to notification as described in Answer to Interrogatory 18 below, a heat shield over and around the EGR pipes was installed by dealers or owners.**

COMMENT:   Volvo does not answer the question posed in Interrogatory Number 10. Rather, Volvo references its Answer to Interrogatory 18. However, Volvo does not answer Interrogatory 18 but merely asserts objections to Interrogatory 18. The steps taken by Volvo to correct the safety defect are certainly relevant to this litigation. Such information goes to when Volvo learned of the defect and the steps they took to correct the defects (as well as the timing of such efforts). Is Volvo stating that the only step

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 7 of 44

that it took to correct the safety defect was that a heat shield over and around the EGR pipes was to be installed by the dealers and owners? Great West is entitled to know each and every step taken to date that Volvo has taken to correct the safety defect described in Safety recall RVXX0601. Great West requests that Volvo answer the Interrogatory.

11.   Identify when Volvo decided that the defect described in Safety Recall RVXX0601 existed in certain Volvo VHD, VNL and VNM model vehicles, including the Subject Truck manufactured with a Volvo D12 Engine from November 2002 through January 2006.

**ANSWER:**   **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 11 to the extent it is duplicative of previous interrogatories, and is vague and ambiguous. Without waiving said objections, see Answer to Interrogatory No. 7.**

COMMENT:   Volvo does not answer the question asked in Interrogatory Number 11. In its answer to Interrogatory 7, Volvo states that it made the determination that the issue described in Safety Recall Notice RVXX0601 existed on January 25, 2006. Is this the date that Volvo decided that the defect described in Safety Recall RVXX0601 existed in certain Volvo VHD, VNL and VNM model vehicles, including the Subject Truck manufactured with a Volvo D12 Engine from November 2002 through January 2006? If not, Great West requests that Volvo answer the Interrogatory as asked and not to provide the information Volvo chooses to provide.

12.   Identify each and every individual who participated in the decision to decide that the safety defect described in Safety Recall RVXX0601 existed in certain Volvo VHO, VNL and VNM model vehicles, including the Subject Truck manufactured with a Volvo D12 Engine from November 2002 to January 2002.

**ANSWER:**   **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 12 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is overbroad, and is unduly burdensome. Without waiving said objections and assuming the period is November 2002 to January 2006, Steve Buchinsky, Bill Dawson, Dennis Langervik, Lars-Goran Lowenadler, Gene O'Keefe, and Therence Pickett.**

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 8 of 44

COMMENT: Is list a list of only Volvo employees? Great West requests that Volvo provide the present (or last) job title(s) and current contact information of each individual identified by Volvo.

13. Identify all Volvo employees responsible for overseeing the issuance of recall notices.

**ANSWER: In addition to its general objections, Volvo Trucks objects to Interrogatory No. 13 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is overbroad, and is unduly burdensome. Without waiving said objections, Tim Lafon.**

COMMENT: Great West requests that Volvo provide the job title and current contact information for Tim Lafon.

14. Identify the number of Volvo trucks that were subject to Recall Notice VXXO601.

**ANSWER: In addition to its general objections, Volvo Trucks objects to Interrogatory No. 14 to the extent that it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, and is overbroad. Without waiving said objections, 38,698 Volvo trucks were subject to Safety Recall Notice RVXXO601.**

COMMENT: Responsive, thank you.

15. Identify the number of Volvo trucks which were serviced to repair the safety defect described in Safety Recall Notice RVXXO601 from February 2006 to September 2006.

**ANSWER: In addition to its general objections, Volvo Trucks objects to Interrogatory No. 15 to the extent that it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is overbroad, and is unduly burdensome. Without waiving said objections, 33,263 Volvo trucks were serviced to repair the issue described in Safety Recall Notice RVXXO601 from February 2006 to September 2006.**

COMMENT: Responsive, thank you.

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 9 of 44

16.    Identify the number of Volvo trucks whose owners were sent Safety

Recall Notice RVXX0601 - Second Notice September 2006.

**ANSWER:**    **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 16 to the extent it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is overbroad, is overbroad, and is unduly burdensome. Without waiving said objections, 10,672 Volvo truck owners were sent the Safety Recall Notice RVXXO601 - Second Notice dated September 2006.**

COMMENT:    Responsive, thank you.

17.    Identify the number of Volvo trucks which were serviced to repair the

safety defect described in Safety Recall Notice RVXX0601 from September 2006 to

November 6, 2006.

**ANSWER:**    **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 17 to the extent that it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is overbroad, and is unduly burdensome. Without waiving said objections, 2,578 Volvo trucks were serviced to repair the issue described in Safety Recall Notice RVXXO601 from September 2006 to November 6, 2006.**

COMMENT:    Responsive, thank you.

18.    Identify all Volvo employees who communicated with the National

Highway Traffic Safety Administration regarding the safety defect described in Safety

Recall Notice RVXXO601 and/or the eventual issuance of Safety Recall Notice

RVXXO601.

**ANSWER:**    **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 18 to the extent that it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is overbroad, and is unduly burdensome.**

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 10 of 44

COMMENT:     Volvo does not answer question asked in Interrogatory Number 18. The identity of those Volvo employees who communicated with the National Highway Traffic Safety Administration regarding the safety defect described in Safety Recall Notice RVXXO601 and/or the eventual issuance of Safety Recall Notice RVXXO601 is relevant to this litigation. Presumably, these individuals would have knowledge of when Volvo learned of the defect described in the Safety Notice; Volvo's actions taken to correct the defect or inform owners of the safety defect; recommendations of the National Highway Traffic Safety Administration. It cannot be burdensome for Volvo to identify these individuals. Great West requests that Volvo answer the Interrogatory.

19.     Identify all steps taken by Volvo in sending recall notices to and following up with the owners of Volvo vehicles to ensure that the owners of the Volvo vehicles subject to the safety recall notice received such notices and identify the person most knowledgeable about this process.

ANSWER:     **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 19 to the extent it is duplicative of previous interrogatories, seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, and is overbroad. Without waiving said objections, the contact information for the owners-of-record of the trucks subject to the safety recall was sent to a third-party service provider which mailed out the notices. Any notices returned as undeliverable, or returned indicating the addressee no longer owned the truck, were researched using R.L. Polk state vehicle registration data to determine a more current address. Notices were then sent to those addresses. A second notice was issued to those owner-of-record who had not responded to the first notice. Tim Lafon is the person most knowledgeable about said process.**

COMMENT:     Great West requests that Volvo identify the third party service provider which mailed out the notices as well as provide the address and telephone number for the third party provider.

20.     Identify all tests, persons or companies who performed such tests, the date and location of such tests, and the results of those tests, conducted by Volvo to

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 11 of 44

properly test, monitor or inspect the EGR cooler inlet pipes and pipes that connect the

EGR valves to the cooler to ensure that the trucks subject to Safety Recall Notice

RVXX0601 were safe, suitable and appropriate for use in the roadway.

**ANSWER:** **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 20 to the extent that it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is unlimited in time, is overbroad, and is unduly burdensome.**

COMMENT: Great West does not answer the question asked in Interrogatory Number 20. The information sought in Interrogatory Number 20 is relevant in that it seeks information concerning the steps taken by Volvo to ensure that the EGR cooler inlet pipes and pipes that connect the EGR valves to the cooler were safe, suitable and appropriate for use in the roadway. Great West requests that Volvo identify all persons who conducted safety and durability testing of the Volvo VEDD12D engine at any time up to November 6, 2006. Additionally, Great West requests that Volvo identify the general nature of any such test, specifically those relating to the exhaust system and the EGR valves. Great West requests that Volvo answer the Interrogatory.

21. Did Volvo consider any alternative designs which incorporated a protective shield

to protect EGR cooler inlet pipes and/or the pipes that connect the EGR valves to the cooler?

**ANSWER:** **In addition to its general objections, Volvo Trucks objects to Interrogatory No. 21 to the extent that it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is unlimited in time, is overbroad in scope, and is unduly burdensome. Without waiving said objections, Volvo Trucks did not design or manufacture the engine or EGR components in the Truck.**

COMMENT: Volvo does not answer Interrogatory Number 21. Volvo has a duty to provide information in its knowledge but also reasonably available to it and under control from other sources, including from such affiliates as Volvo Powertrain AB. Is it Volvo's contention that no engineer from Volvo Trucks ever considered an alternative design which incorporated a protective shield to protect EGR cooler inlet pipes and/or the pipes that connect the EGR valves to the cooler?

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 12 of 44

22.    If your answer to Interrogatory Number 22 was in the affirmative, identify all such alternative designs.

**ANSWER:    In addition to its general objections, Volvo Trucks objects to Interrogatory No. 22 to the extent that it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is unlimited in time, is overbroad in scope, and is unduly burdensome. Without waiving said objections, see Answer to Interrogatory No. 21.**

COMMENT:    See Comment to Interrogatory Number 21.

23.    For each alternative design identified in Interrogatory Number 23, identify each and every reason why such alternative design was not incorporated into the design.

**ANSWER:    In addition to its general objections, Volvo Trucks objects to Interrogatory No. 23 to the extent that it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is unlimited in time, is overbroad in scope, and is unduly burdensome. Without waiving said objections, see Answer to Interrogatory No. 21.**

COMMENT:    Please see our comment to Interrogatory Number 21.

24.    Identify each Volvo truck owned by Chicago Logistics which Volvo contends was serviced to repair the safety defects described in Safety Recall Notice RVXX0601 prior to the November 6, 2006 truck fire.

**ANSWER:    Without waiving its general objections, the VIN Numbers of the Volvo trucks that were owned by Chicago Logistics and serviced pursuant to Safety Recall Notice RVXXO601 prior to the November 6, 2006 truck fire are as follows: 4V4NC9GH86N437368;                      4V4NC9GH66N437370; 4V4NC9GH86N437371; 4V4NC9GH36N437374; 4V4NC9GH37N437375; 4V4NC9GH57N437376**

COMMENT:    This appears responsive, thank you.

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 13 of 44

## VOLVO'S JUNE 1, 2009 RESPONSES TO PLAINTIFF'S REQUEST TO PRODUCE

1.    Any and all documents reflecting the statement of any party to anyone other than his own attorney or liability insurance carrier.

**RESPONSE:  Without waiving its general objections, none.**

COMMENT:    None.

2.    All written materials, including but not limited to sales documents, receipts, instruction manuals, operation guidelines, operator's manual, notes, memoranda, purchase orders, contracts, warranty registration, warranty certificate or other documents relating to the Subject Truck or this lawsuit.

**RESPONSE:  Without waiving its general objections, the documents described in Request to Produce No. 2 are already in the possession of Plaintiff, and were previously provided to Chicago Logistics upon purchase of the Truck and upon purchase of the nine other Volvo trucks purchased by Chicago Logistics. In further response, see the Warranty Registration, Standard Volvo Engine Warranty Certificate, and Standard Truck Warranty Certificate, already in the possession of Plaintiff, and VTNA_0107 - VTNA_0110.**

COMMENT:    Volvo is aware that Chicago Logistics asserts that a January 2008 fire destroyed almost all documents requested in Request to Produce Number 2. As such, neither Chicago Logistics nor Great West is in possession of the requested documents.  Great West requests that Volvo produce its copies of those documents requested which Volvo asserts is in the possession of Plaintiff or were previously produced to Chicago Logistics upon its purchase of the Truck.  Additionally, this Request seeks the production of all sales documents, contracts and purchase orders between Volvo and Volvo Powertrain AB for the Truck.  Great West requests that Volvo produce the documents requested in this Request.

3.    All documents relating to all agreements between LaBeau Bros. Inc. to sell or service Volvo trucks.

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 14 of 44

**RESPONSE:** **In addition to its general objections, Volvo Trucks objects to Request to Produce No. 3 to the extent it is vague, ambiguous, unduly burdensome, unlimited in time, overbroad in scope, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence.**

COMMENT: The contracts between Volvo and its distributer/retailer relating to sales and service are potentially relevant to several issues in this case. Great West requests that Volvo produce all documents relating to all agreements between Volvo and LeBeau Bros. Inc to sell or service Volvo trucks from October/November 2002 up and until November 6, 2006. Included in this request are all franchise agreements and related correspondence in effect from the time the subject truck was sold to La Beau relating to franchise agreements, sales contracts/purchase orders relating to the purchase of Volvo trucks.

4.     All documents referred to or identified in your answers to interrogatories.

**RESPONSE:** **Without waiving its general objections, see CT_0001 CT_0021, LB_0001 - LB 0013, and VTNA0001 - VTNA_0037, which were previously produced to Plaintiff. See also, Volvo Trucks' January 26, 2006 press release produced herewith.**

COMMENT: As our comments on Volvo's interrogatories make clear, we believe additional information and therefore likely additional documents will be needed in response to this request.

5.     All documents relating to the negotiation, formation and execution of the agreement to purchase the Subject Truck.

**RESPONSE:** **Without waiving its general objections, see the Warranty Registration, Standard Volvo Engine Warranty Certificate, and Standard Truck Warranty Certificate, already in the possession of Plaintiff.**

COMMENT: Volvo is aware that Chicago Logistics asserts that a January 2008 fire destroyed almost all documents requested in Request to Produce Number 5. As such, neither Chicago Logistics nor Great West is in possession of the requested documents. Great West therefore requests that Volvo

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 15 of 44

produce its copies of those documents requested which Volvo asserts is in the possession of Plaintiff or were previously produced to Chicago Logistics upon its purchase of the Truck. "Purchase of the truck" includes documentation of the sale of the subject truck from Volvo to LaBeau or any intermediate distributor. Additionally, this Request seeks the production of all sales documents, contracts and purchase orders between Volvo and Volvo Powertrain AB for the engine in the Truck. Great West requests that Volvo produce the documents requested in this Request.

6.    All documents written by or received by you or Great West relating to the

Subject Truck.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 6 to the extent it is vague, ambiguous, unlimited in time, overbroad in scope, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence. Without waiving said objections, see documents produced to Volvo Tricks by Great West, GW 0001 - GW 0238, CL 00001 - CL 01335. See also VTNA_0038 - VTNA_0110.**

COMMENT:    None.

7.    All documents written by or received by you or Chicago Logistics relating

to the Subject Truck.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 7 to the extent it is vague, ambiguous, unlimited in time, overbroad in scope, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence. Without waiving said objections, see CL 00001 - CL 01335 produced by Plaintiff to Volvo Trucks in response to Volvo Trucks' subpoena to Chicago Logistics.**

COMMENT:    None.

8.    All documents received by you in response to a subpoena in this

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 16 of 44

lawsuit.

**RESPONSE:** **Without waiving its general objections, see LB_0001 - LB_0013, previously produced to Plaintiff.**

COMMENT:    None.

9.      All documents relating to any inspection, testing, or examination of the

Subject Truck prior to November 6, 2006.

**RESPONSE:** **In addition to its general objections, Volvo Trucks objects to Request to Produce No. 9 to the extent it is vague, ambiguous, overbroad in scope, and seeks irrelevant information. Without waiving said objections, Volvo Trucks did not design or manufacture the engine or EGR components in the Truck. Without waiving said objections, investigation continues.**

COMMENT:    Great West requests that Volvo supplement its response to this Request. Volvo's response of "investigation continues" is not responsive.   Does Volvo inspect the trucks that it sells?   If so, Great West requests that Volvo produce the responsive documents.   If Volvo does not, then Great West requests that Volvo states that fact.   If Volvo has still be not able to determine whether or not the Truck was inspected, tested, or examined prior to November 6, 2006, Great West requests that Volvo why such a determination has not been made.

10.      All documents relating to any inspection, testing, or examination of the

Subject Truck after November 6, 2006.

**RESPONSE: Without waiving its general objection, none.**

COMMENT:    None.

11.      All marketing materials, sales brochures, advertisements or other

documents or correspondence issued or made by Volvo or any of its subsidiaries to

dealers, buyers, or the public describing features, functionality, specifications and

usages of the Subject Truck.

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 17 of 44

**RESPONSE:** **In addition to its general objections, Volvo Trucks objects to Request to Produce No. 11 to the extent it is vague, ambiguous, overbroad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence. Without waiving said objections see VTNA_0111 - VTNA_0114.**

COMMENT: Great West is entitled to know of all representations made by Volvo to the public regarding the performance of the Truck. In response to this Request, Volvo has produced a 4-page brochure for the VNL DAYCAB. Does Volvo contend that this 4-page brochure is the only marketing material, sales brochure, advertisement or other document or correspondence issued or made by Volvo or any of its subsidiaries to dealers, buyers, or the public describing features, functionality, specifications and usages of the Subject Truck? If not, Great West requests that Volvo produce all documents responsive to this Request. In an attempt to limit the scope of this Request, Great West will limit its request to materials relating to the model year of the Subject Truck.

12. All documents relating to your settlement of any claims or lawsuits relating to the safety defect described in Safety Recall RVXX0601.

**RESPONSE:** **In addition to its general objections, Volvo Trucks objects to Request to Produce No. 12 to the extent it is vague, ambiguous, overbroad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence.**

COMMENT:

13. All documents relating to when you first learned of the safety defect described in Safety Recall Notice RVXX0601.

**RESPONSE:** **In addition to its general objections, Volvo Tricks objects to Request to Produce No. 13 to the extent it is vague, ambiguous, overbroad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence. Without waiving said objections, see VTNA_0115 - VTNA_0117, Volvo Truck's January 26, 2006 press release, Safety Recall Notice RVXX0601 dated February 2006, and Second Safety Recall Notice RVXX0601 dated September 2006.**

COMMENT: The date that Volvo first learned of the safety defect described in Safety Recall Notice RVXX0601 is relevant to this litigation as this date would be

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 18 of 44

the latest date that Volvo would have been put on notice that a defect may exist in the engine. There is an active claim for negligence pending and the awareness of Volvo, if any, that it was selling products with dangerous defects, for example, is very relevant to this claim. Volvo has not produced any documents responsive to this Request. In fact, the only documents referred to by Volvo in its response are documents prepared **after** Volvo presumably determined that the safety defect described in Safety Recall Notice RVXX 0601existed. There must exist documentation relating to when Volvo first learned of the safety defect described in Safety Recall Notice RVXX 0601. VTNA 0115-0117 sets forth a chronology of events beginning October 24, 2005. However, Volvo has not produced any documents relating to any of the events identified in the timeline. Great West requests that Volvo produce the documents relating to this chronology of events. Additionally, VTNA 0115-0117 states that there were 358 warranty claims related to Recall Notice RVXX0601 from August 29, 2003 through January 10, 2006. However, no documentation of these claims have been produced by Volvo. Great West requests that Volvo produce the documentation concerning these claims. Finally, Great West requests that Volvo produce any additional documents responsive to this Request not otherwise discussed in this Comment.

14.    All documents relating to each and every step you took to correct the safety defects described in Safety Recall Notice RVXX0601.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 14 to the extent it is vague, ambiguous, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the admissible evidence. Without waiving said objections, see VTNA_0115 VTNA_0117, Volvo Truck's January 26, 2006 press release, Safety Recall Notice RVXX0601 dated February 2006, and Second Safety Recall Notice RVXX0601 dated September 2006.**

COMMENT:    Volvo has already asserted that Chicago Logistics failed to take "timely" action in responding to its recall notice or notices. The trier of fact may well be interested in how timely Volvo responded to information relating to possible safety issues in trucks it marketed. The steps taken by Volvo to correct the safety defect are certainly relevant to this litigation. Such information goes to when Volvo learned of the defect and the steps they took to correct the defects (as well as the timing of such efforts). Is it Volvo contention that they only steps it took to correct the safety defect described in Safety Recall RVXX0601 was to issue a press release and

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 19 of 44

issue the recalls? Volvo did not undertake any tests to determine what the appropriate remedy was for this defect? How did Volvo determine that installing a heat shield was the appropriate remedy? Great West requests that Volvo produce all documents responsive to this Request.

15. All documents relating to your decision that the safety defect described in Safety Recall RVXX0601 existed in certain Volvo VTID, UNL and VNM model vehicles, including the Subject Truck, manufactured with a Volvo D12 Engine from November 2002 through January 2006.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 15 to the extent it is vague, ambiguous, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence. Without waiving said objections, see VTNA_0115 - VTNA_0117, Volvo Truck's January 26, 2006 press release, Safety Recall Notice RVXX0601 dated February 2006, and Second Safety Recall Notice RVXX0601 dated September 2006.**

COMMENT: See comment to Request Number 14.

16. All documents relating to any test, inspection or examination of the EGR cooler inlet pipes that you conducted to ensure that the trucks subject to Safety Recall Notice RVXX0601 were safe, suitable, and appropriate for use on the roadway.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 16 to the extent it is vague, ambiguous, unlimited in time, overbroad in scope, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence. Without waiving said objections, see Answer to Interrogatory No. 21 and VTNA 0118 - VTNA_0126. Investigation continues.**

COMMENT: The documentation sought in Request Number 16 is relevant in that it seeks information concerning the steps taken by Volvo to ensure that the EGR cooler inlet pipes were safe, suitable and appropriate for use in the roadway. Great West requests that Volvo produce documentation concern any safety and durability testing of the EGR cooler inlet pipes at any time up to November 6, 2006. The only documents which Volvo has

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 20 of 44

identified responsive to this request is a heat shield road test performed January 26-30, 2006. Great West requests that Volvo produce all documents responsive to this Request.

17. All documents relating to any test, examination, or inspection of the pipes that connect the EGR valves to the cooler that you conducted to ensure that the trucks that were subject to Safety Recall Notice RVXXO601 were safe, suitable, and appropriate for use on the roadway.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 17 to the extent it is vague, ambiguous, unlimited in time, overbroad in scope, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence. Without waiving said objections, see Answer to Interrogatory No. 21. Investigation continues.**

COMMENT: The documentation sought in Request Number 17 is relevant in that it seeks information concerning the steps taken by Volvo to ensure that the pipes that connect the EGR valves to the cooler were safe, suitable and appropriate for use in the roadway. Great West requests that Volvo produce documentation concern any safety and durability testing of the pipes that connect the EGR valves to the cooler at any time up to November 6, 2006. The only documents which Volvo has identified responsive to this request is a heat shield road test performed January 26-30, 2006. Great West requests that Volvo produce all documents responsive to this Request.

18. All documents relating to any alternative designs for the trucks subject to Safety Recall Notice RVXXO601, the incorporated a protective heat shield to protect the EGR cooler inlet pipes, and/or the pipes that connect the EGR valves to the cooler.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 18 to the extent that it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is unlimited in time, is overbroad in scope, and is unduly burdensome. Without waiving said objections, see Answer to Interrogatory No. 21.**

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 21 of 44

COMMENT: Volvo has not produced any documents responsive to this Request. Volvo has a duty to provide information in its knowledge but also available to it from other sources, including Volvo Powertrain AB. Is it Volvo's contention that no engineer from Volvo Trucks ever considered an alternative design which incorporated a protective shield to protect the EGR cooler inlet pipes and/or the pipes that connect the EGR valves to the cooler? Great West requests that Volvo produce all documents responsive to this Request.

19. All documents relating to your decision not to implement any alternative designs for the trucks subject to Safety Recall Notice RVXXO601 that incorporated a protective shield to protect the EGR cooler inlet pipes and/or the pipes that connect the EGR valves to the cooler.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 19 to the extent that it seeks irrelevant information, is not reasonably calculated to lead to admissible evidence, is vague and ambiguous, is unlimited in time, is overbroad in scope, and is unduly burdensome. Without waiving said objections, see Answer to Interrogatory No. 21.**

COMMENT: See Comment to Request Number 18.

20. All documents relating to the repair of the safety defect described in Safety Recall Notice RVXX0601 for any truck owned by Chicago Logistics.

**RESPONSE: Without waiving its general objections, see CT_0001 - CT_0021, LB_0001 - LB 0013, and VTNA_0001 - VTNA_0037, which were previously produced to Plaintiff.**

COMMENT: None.

21. All documents relating to any claim made to you for damages resulting from the failure of the EGR cooler inlet pipes and/or the pipes that connect the EGR valve to the cooler for the trucks that were subject to Safety Recall Notice RVXX0601.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 21 to the extent it is vague, ambiguous,**

Mr. Charles LeMoine, Esq.
Mr. Daniel Noland, Esq.
Mr. Ryan Williams, Esq.
Dykema Gossett PLLC
August 20, 2009
Page 22 of 44

> **unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence.**

COMMENT:   Volvo has not produced any documents responsive to this Request. The documents requested in this Request are relevant to this litigation as it goes directly to what Volvo knew about the seriousness of the defect prior to issuing the February 2006 recall notice. Information known to Volvo prior to the issuance of the February 2006 recall is relevant when evaluating the adequacy of the language ultimately include in Safety Recall Notice RVXX0601. Great West requests that Volvo produce all documents responsive to this request.

22.    Copies of all lawsuits filed against you for damages resulting from the failure of the EGR cooler inlet pipes and/or the pipes that connect the EGR valves to the cooler for the trucks that were subject to Safety Recall Notice RVXX0601.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 22 to the extent it is vague, ambiguous, overbroad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence.**

COMMENT:   In an attempt to limit this Request, Great West requests that Volvo produce copies of all lawsuits filed in the United States for damages resulting from the failure of the EGR cooler inlet pipes and/or the pipes that connect the EGR valves to the cooler for the trucks that were subject to Safety Recall Notice RVXX0601. Great West requests that Volvo produced all documents responsive to this amended Request.

23.    All documents or lists identifying all Volvo trucks whose owners were sent Safety Recall Notice RVXX0601 dated February 2006.

**RESPONSE: In addition to its general objections, Volvo Trucks objects to Request to Produce No. 23 to the extent it seeks confidential business information between Volvo Trucks and its customers, is vague, ambiguous, overbroad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to admissible evidence.**

COMMENT:   As Volvo is aware, Chicago Logistics denies that it ever received Safety Recall Notice RVXX 0601 dated February 2006. Great West is entitled to see all documents or lists identifying all Volvo trucks whose owners were