# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREAT WEST CASUALTY COMPANY, ) <br> as subrogee of CHICAGO LOGISTICS, LLC ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VOLVO TRUCKS NORTH AMERICA, INC. ) <br> ) <br> Defendant. ) | No. 08-CV-2872 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

Volvo Trucks North America, Inc. ("Volvo") moves to dismiss Count IV of the first amended complaint filed by Great West Casualty Company ("Great West"), a subrogee of Chicago Logistics, LLC ("Chicago Logistics").[1] Great West's first amended complaint asserts claims for strict products liability (Count I), negligence (Count II), breach of written (express) warranty (Count III), and failure to warn (Count IV). Volvo moves to dismiss Count IV pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that (1) Volvo does not have adequate notice of the claims against it because Count IV, which asserts that Volvo violated federal statutes and regulations requiring safety notifications, does not cite specific statutes or regulations; and (2) Great West's common law failure to warn claim is preempted by the vehicle defect notification provisions in the National Traffic and Motor Vehicle Safety Act. For the following reasons, Volvo's motion to dismiss [85] will be denied.

## BACKGROUND

The following facts are taken from the first amended complaint and are presumed true for the purpose of resolving the pending motion. On or about December 28, 2005, Chicago

---

[1] The court has jurisdiction under 28 U.S.C §§ 1332 because the parties are diverse (plaintiff and defendant are Nebraska and Delaware corporations, respectively) and the amount in controversy exceeds $75,000. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to Great West's claims occurred in this District.

Logistics purchased a new Volvo truck chassis from an authorized Volvo dealer. Approximately one month later, in January 2006, Volvo issued an order to stop shipments of the type of truck that Chicago Logistics had purchased because of a defect in the engine that could lead to fires.[2] Chicago Logistics continued to operate the truck until November 6, 2006, when the engine suddenly caught fire on I-55 in Stickney, Illinois. The fire, which substantially destroyed the truck, was caused in part by the defect in the truck's engine.

In Count IV of its first amended complaint, Great West alleges that, as of the date when Chicago Logistics purchased the truck, Volvo knew or should have known of the truck's engine defects and that Volvo was negligent in failing to warn Chicago Logistics and/or its authorized dealer of the defects. Great West also asserts that Volvo violated unspecified federal statutes and regulations that require prompt notice of safety defects. Great West alleges that Volvo is strictly liable for its failure to warn of the defects. In addition, had Volvo acted on the available information in a timely manner, it would have issued a stop shipment order before Chicago Logistics received the truck.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed.

---
[2] Volvo asserts that it issued a recall, rather than a stop shipment order. [Volvo's Reply Br. at 4]

2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, --- F.3d ----, 2010 WL 3385191, at *1 (7th Cir. Aug. 30, 2010). Rather, it is the facts that count.

## DISCUSSION

**I. Whether Count IV Gives Volvo Adequate Notice of the Claims Against It**

Citing *Twombly* and *Iqbal*, Volvo first argues that Count IV should be dismissed to the extent that it alleges violations of state and federal statutes and regulations because it does not state which federal statutes or regulations Volvo violated or how the alleged violations occurred. Volvo's argument is not supported by the case law in this district. As the Seventh Circuit recently reiterated, "[a]lthough [*Twombly* and *Iqbal*] require that a complaint in federal court allege facts sufficient to show that the case is plausible . . . they do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories. . . . Even citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction." *Hatmaker*, 2010 WL 3385191, at *1 (citing *Aaron* v. *Mahl*, 550 F.3d 659, 665-66 (7th Cir. 2008); *O'Grady* v. *Vill. of Libertyville*, 304 F.3d 719, 723 (7th Cir. 2002); *Ryan* v. *Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999)).

Here, Great West alleges that Chicago Logistics purchased a defective truck from Volvo and that Volvo knew this truck was defective at the time the truck left its control. Great West alleges that Volvo knew that the truck was defective because it had received several fire-related liability claims and warranty claims since August 2003. Based on its knowledge of the truck's defect, Volvo should have warned Chicago Logistics and/or its dealer that the truck contained

3

defects and was in an unreasonably dangerous condition. These facts are more than sufficient to put Volvo on notice of Great West's claim. Even though the first amended complaint references Volvo's alleged violations of federal statutes and regulations as part of its failure to warn claim, the complaint need not specify which federal statutes and regulations Volvo violated. *See*, *e.g.*, *Aaron*, 550 F.3d at 666 n.7 (a plaintiff does not need to plead the elements of his claim, only factual allegations that are "enough to raise a right to relief above the speculative level" (quoting *Twombly*, 550 U.S. at 555)); *Hall* v. *Nalco Co.*, 534 F.3d 644, 649 n.3 (7th Cir. 2008) ("'[A] complaint need not identify a legal theory, and specifying an incorrect theory is not fatal' to a plaintiff's claim." (quoting *Bartholet* v. *Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)). Count IV of Great West's complaint will not be dismissed for failure to provide Volvo with notice of the nature of Great West's claim.

**II. Whether Count IV Is Preempted by the National Traffic and Motor Vehicle Safety Act**

Volvo next argues that Great West's common law claim for failure to warn should be dismissed because it is preempted by the defect notification and vehicle recall procedures in the National Traffic and Motor Vehicle Safety Act (the "Safety Act," or the "Act").

Pursuant to the Supremacy Clause of the Constitution, Congress may preempt state law. *See, e.g., La. Pub. Serv. Comm'n* v. *FCC*, 476 U.S. 355, 368, 106 S. Ct. 1890, 90 L. Ed. 2d 369 (1986). "'[T]he purpose of Congress is the ultimate touchstone' in every preemption case." *Medtronic, Inc.* v. *Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) (quoting *Retail Clerks Int'l Ass'n* v. *Schermerhorn*, 375 U.S. 96, 103, 84 S. Ct. 219, 11 L. Ed. 2d 179 (1963)). A federal statute may preempt state law where (1) Congress explicitly preempts state law; (2) Congress intended federal law to occupy the entire field (field preemption); or (3) there

4

is a conflict between the federal statute and state law (conflict preemption). *Freightliner* v. *Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1483, 131 L. Ed. 2d 385 (1995).

Congress enacted the Safety Act in order "to reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. The Act gives the Secretary of Transportation authority to establish "federal motor vehicle safety standards," *id.* § 30111(a), which are defined broadly as "minimum standard[s] for motor vehicle or motor vehicle equipment performance." *Id.* § 30102(a)(9). The Act also contains detailed procedures that require the manufacturer of a motor vehicle to notify the Secretary of Transportation, as well as dealers and purchasers, if a product contains a dangerous defect. *See id.* §§ 30118-30121. Section 30118, titled "notification of defects and noncompliance," states that a manufacturer "shall notify" the Secretary and owners, purchasers, and dealers of the vehicle if the manufacturer "learns that the vehicle . . . contains a defect and decides in good faith that the defect is related to motor vehicle safety." *Id.* § 30118(c)(1). Section 30119, titled "notification procedures," specifies that such notification "shall be given within a reasonable time . . . after the manufacturer first decides that a safety-related defect or noncompliance exists." *Id.* § 30119(c). In addition, on motion of the Secretary or any interested person, the Secretary may conduct a hearing to decide whether the manufacturer "reasonably met" the notification requirements of the Safety Act. *Id.* § 30118(e). If the Secretary of Transportation makes a final decision that the vehicle contains a defect, the Secretary shall order the manufacturer to give notification of the defect to vehicle owners, purchasers, and dealers (if the manufacturer has not done so already) and shall also order the manufacturer to remedy the defect by issuing a recall and repairing, replacing, or refunding the purchase price of the vehicle. *Id.* §§ 30118(b)(2), 30120(a).

The Safety Act includes a preemption provision and two savings clauses that are relevant to Volvo's motion. The preemption provision provides that "[w]hen a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or . . . equipment only if the standard is identical to the standard prescribed under this chapter." *Id.* § 30103(b)(1). The savings clauses state:

> **Warranty obligations and additional legal rights and remedies.** - Sections 30117(b), 30118-30121, 30166(f), 30167(a) and (b) of this title do not establish or affect a warranty obligation under a law of the United States or a State. A remedy under those sections and sections 30161 and 30162 of this title is in addition to other rights and remedies under other laws of the United States or a State.
>
> **Common law liability.** - Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law.

*Id.* §§ 30103(d), (e). Taken together, the Act's preemption provision and savings clauses preserve common law claims that do not conflict with motor vehicle safety standards set forth pursuant to the Act. *Geier* v. *Amer. Honda Motor Co., Inc.*, 529 U.S. 861, 870, 120 S. Ct. 1913, 146 L. Ed. 2d 914 (2000); *Gracia* v. *Volvo Europa Truck, N.V.*, 112 F.3d 291, 298 (7th Cir. 1997).

Volvo asserts that Great West's failure to warn claim is preempted because it conflicts with the notification procedures set forth in sections 30118(c)(1) and 30119(c) of the Safety Act. It argues that a conflict arises because Great West alleges that Volvo is "strictly liable" for failure to warn whereas the Act's notification provision merely requires that a manufacturer provide notice of a defect "within a reasonable time" after it learns of the defect. *See* 49 U.S.C. § 30119(c). Volvo's argument is undermined, however, by the Act's savings clauses, which provide that the Act's notification and recall provisions, *id.* §§ 30118-30121, are "in addition to" rights and remedies available under state law. *See* 49 U.S.C. § 30103(d). Section 30103(d)

6

indicates that the Act's notification procedures were not intended to preempt common law tort claims.[3]

The cases Volvo cites stand for the proposition that a common law claim cannot impose safety requirements that conflict with standards set forth by the Secretary; they do not address whether a purchaser is entitled to the full panoply of common law *remedies* if a vehicle admittedly falls short of those standards.[4] *See Geier*, 529 U.S. at 886 (Safety Act preempted claim alleging negligence for failure to equip car with driver's side airbag); *Hurley* v. *Motor Coach Indus., Inc.*, 222 F.3d 377, 383 (7th Cir. 2000) (preemption of claim alleging design defect based on theory of uncrashworthiness); *Gracia*, 112 F.3d at 298 (preemption of strict liability action alleging that windshield retention system was unreasonably dangerous); *Osman* v. *Ford Motor Co.*, 833 N.E.2d 1011, 1020-21, 359 Ill. App. 3d 367, 295 Ill. Dec. 805 (2005) (preemption of claim alleging failure to provide adequate warning of danger associated with the use of passive shoulder belt without latching the manual lap belt); *Mejia* v. *White GMC Trucks, Inc.*, 784 N.E.2d 345, 352, 336 Ill. App. 3d 702, 271 Ill. Dec. 127 (2002) (preemption of claim alleging negligence for selling truck that was unreasonably dangerous because of flimsy door latch handle on passenger door). These cases, which focus on motor vehicle safety standards, do not mandate dismissal where the alleged preemption relates to the Act's notification procedures.

Of greater relevance are the small number of cases, including one from this district, where courts have held that state law claims seeking judicially-ordered recalls were preempted

---

[3] The court is not aware of any cases that interpret this clause.

[4] There appears to be no dispute as to whether the truck purchased by Chicago Logistics met the applicable motor vehicle safety standards. As Volvo explains in its reply brief, "Volvo Trucks submitted and [the National Highway Traffic Safety Administration ("NHTSA")] accepted a recall on the model of truck Plaintiff's subrogor owned." [Reply Br. at 4] The only inference that can be drawn from this statement is that Volvo and the NHTSA are in agreement that the truck had a defect that related to motor vehicle safety or was otherwise not in compliance with the safety standards.

by the Safety Act. *See Cox House Moving, Inc.* v. *Ford Motor Co.*, No. 7:06-1218-HMH, 2006 WL 2303182 (D.S.C. Aug. 8, 2006); *Lilly* v. *Ford Motor Co.*, No. 00 C 7372, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002); *In re Bridgestone/Firestone Inc.*, 153 F. Supp. 2d 935 (S.D. Ind. 2001); *Coker* v. *DaimlerChrysler Corp.*, No. 01 CVS 1264, 2004 WL 32676 (N.C. Super. Ct. Jan. 5, 2004). *But see Stroderd* v. *Yamaha Motor Corp., U.S.A.*, No. Civ.A. 04-3040, 2005 WL 2037419, at *5 (E.D. La. 2005) (allowing claim for redhibition[5] to proceed and rejecting the argument that "any state suit concerning the administration of a motor vehicle recall conflicts with the Safety Act and is precluded"); *Chamberlain* v. *Ford Motor Co.*, 314 F. Supp. 2d 953 (N.D. Cal. 2004) (allowing claim that requested a court-ordered stop shipment order). In *Bridgestone/Firestone*, the case that analyzes preemption most comprehensively, the district court based its analysis upon the principle that conflict preemption is appropriate where "the administrative systems in place for managing the matters at issue in the cases [are] sufficiently comprehensive that any state law purporting to act in the area [is] a 'serious interference with the achievement of the full purposes and objectives of Congress.'" 153 F. Supp. 2d at 944 (quoting *Int'l Paper Co.* v. *Ouellette*, 479 U.S. 481, 493-94, 107 S. Ct. 805, 93 L. Ed. 2d 883 (1987)). In finding that conflict preemption was applicable to the plaintiffs' request for a recall, the *Bridgestone/Firestone* court emphasized that the Act's recall procedures set forth a comprehensive scheme for prospective relief from vehicle defects, that other sections of the Act contain specific and detailed instructions on how to remedy defects and noncompliance, and that the Act gives the Secretary discretion to determine the need for notification and order a recall. *Bridgestone/Firestone*, 153 F. Supp. 2d at 944-45; *see also Lilly*, 2002 WL 84603, at *5.

---

[5] Redhibition is a civil law cause of action that results in the "voidance of a sale . . . on grounds that [a] defect renders the thing either useless or so imperfect that the buyer would not have originally purchased in." BLACK'S LAW DICTIONARY 1304 (8th ed. 2004).

In contrast to the plaintiffs who sought injunctive relief through a recall, however, Great West has not requested a form of relief that interferes with the objective of the Act's administrative procedures.[6] The "crucial distinction" between the recall cases and this case is that Great West is seeking damages, a remedy that is not provided by the Act,[7] rather than prospective injunctive relief, a remedy that is provided by the Act's vehicle recall procedures. *Bridgestone/Firestone*, 153 F. Supp. 2d at 942. Moreover, as the *Bridgestone/Firestone* court emphasized, "states have never assumed a significant role in *recalls* related to vehicle safety" and there is scant legal authority to authorize a recall under common law. *Id.* at 940-42. The legitimacy of state failure to warn claims have not been similarly called into doubt, even in the context of motor vehicle products liability. *See, e.g., Whitted* v. *General Motors Corp.*, 58 F.3d 1200, 1207 (7th Cir. 1995) (failure to warn of unreasonably dangerous seatbelt); *Andrade* v. *General Motors Corp.*, 785 N.E.2d 214, 218, 336 Ill. App. 3d 827, 271 Ill. Dec. 563 (2003) (failure to warn of unreasonably dangerous driver's seat). Even if the court were to accept the analyses put forward by some of the cases where judicially-ordered recalls were found to be preempted, Great West's common law claim for failure to warn would survive Volvo's motion to dismiss.

Volvo has cited no authority that supports the conclusion that Congress intended the Safety Act's notification procedures – as opposed to motor vehicle safety standards – to preempt common law tort remedies. Nor is the court aware of any case holding that the Safety Act's notification provisions, specifically sections 30118 and 30119, preempt a common law failure to

---

[6] As noted above, it appears that Volvo has already issued a recall of the type of truck that Chicago Logistics purchased.

[7] Although the Seventh Circuit has not examined the Safety Act's notification procedures, the Eleventh Circuit has held that the Safety Act does not create a private right of action to enforce its notification requirements. *See Ayres* v. *Gen. Motors Corp.*, 234 F.3d 514, 522 (11th Cir. 2000).

9

warn claim. Given the language of the Act's savings clauses, the type of remedy Great West seeks, and the lack of authority that would support the conclusion that preemption applies to the Safety Act's notification procedures, the court concludes that Count IV of Great West's first amended complaint is not preempted by the Safety Act.

## CONCLUSION AND ORDER

For the foregoing reasons, Volvo's motion to dismiss [85] is denied. Volvo has fourteen days to answer Great West's first amended complaint.


Dated: October 20, 2010          Entered: _____

                                                            JOAN HUMPHREY LEFKOW
                                                            United States District Court Judge