IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Great West Casualty Company,** as subrogee of Chicago Logistics, LLC Plaintiff, v **Volvo Trucks North America, Inc.** Defendant. | Case Number: **08-cv-2872** Honorable Joan Humphrey Lefkow Magistrate Judge Morton Denlow |

### PLAINTIFF'S RESPONSE TO VOLVO TRUCK'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Great West Casualty Company ("Great West"), by its undersigned attorneys, responds to Defendant, Volvo Trucks North America, Inc.'s ("VTNA"), Motion for Summary Judgment (Doc. #: 147), including its Memorandum of Law (Doc: #: 148) and its LR56.1 Statement (Doc. #: 149) (collectively "Motion" or "Motion for Summary Judgment") and asks that the Motion de denied with prejudice. In response to this Motion, Plaintiff states:

### I. INTRODUCTION

Chicago Logistics' Volvo Truck was destroyed by a sudden engine compartment fire on November 6th, 2006. The fire was the result of a defective EGR cooler pipe, which cracked, blew superheated exhaust gases into the engine compartment, and ignited it. Volvo began receiving warranty claims and other documentation of cracked cooler pipes with this truck engine in 2003 and by January of 2006 had received 358 warranty claims and notifications of failed pipes, inclding notification of engine fires

linked to the defect. Volvo had an obligation under federal law to promptly notify the federal government of product defects which affected product safety, to stop the sale of trucks containing safety defects, and issue a product recall to repair trucks already sold. Chicago Logistics purchased the truck at issue, new, from an authorized Volvo dealer on January 9, 2006. Days later, VTNA notified the federal government of the defect and on January 25th issued public notice of the defect, a stop shipment order for trucks like the subject truck, and a recall. These facts are not in dispute, and in any event would need to be construed in favor of the non movant here.

  The only significant factual dispute in this case has been when Chicago Logistics received the voluntary recall notice issued by VTNA. VTNA mailed recall notices to customers which were dated "February 2006" and "September 2006." Both persons with responsibility for truck maintenance in 2006, including Thomas Amadio, testified that they did not recall receiving any such notices and that their practice would have been to contact the dealer promptly upon receipt of any notices to schedule service. Amadio specifically denied ever seeing the recall notice before the November 6, 2006 fire. The dealer picked trucks up from Chicago Logistics, serviced them, and returned them, over the weekend to minimize business disruption. The recall notice is not a part of the truck's warranty, and permitted owners to continue to operate their trucks unless an actual crack (distinguished by a changed exhaust sound existed) and that , in this case, by the time the Chicago Logistics driver noticed the exhaust noise, the engine was already smoking.

Taking plaintiff's allegations as true, VTNA should never have sold the truck here in its defective condition; the stop shipment order should have been issued long before. In selling it, VTNA negligently violated , *inter alia,* its duties under federal law, and recovery of damage for violation is appropriate and not impacted by the economic loss rule. Because the 2012 declaration of Thomas Amadio contradicts his 2009 deposition in almost every essential, it should be accorded no weight, and at most Amadio's Janus-like testimony only creates fact issues. Finally, the "obligations" imposed by a voluntary recall notice do not impact the ability of the written warranty here, which requires VTNA to replace a defective product. Material issues of fact preclude summary judgment

## II. THE AMADIO DECLARATION DOES NOT RESOLVE ANY ISSUES OF FACT, IT JUST CREATES MORE.

VTNA claims that it is justified in filing its (technically untimely) summary judgment motion now because it has only recently procured a declaration from Thomas Amadio (" 2012 Amadio declaration.") a former employee of Chicago Logistics, who previously had been deposed in this case by VTNA's counsel. Amadio's declaration tells a tale of intentional disregard by his former employer of multiple recall notices from VTNA, in order to keep the trucks on the road and out of the dealership, in sharp contrast to the company practices he described at his deposition. VTNA claims that it did not file the instant Motion for Summary Judgment at the time discovery closed "[b]ecause there was previously a question of fact regarding the [recall] notice that Chicago Logistics received" but, VTNA now claims that only because of the "newly

discovered evidence, there is now no question of fact that Chicago Logistics was entirely aware of the risk of an engine fire in the Truck."(VTNA Motion for Leave to File, Doc No. 141, p. 3)

The Amadio Declaration provides the essential foundation for the instant Motion: The Declaration and the documents it purports to authenticate are cited in no less than 17 of the 30 paragraphs of VTNA's LR 56.1 statement. But VTNA has built its motion on a foundation of sand; it is premised upon an assumption that the 2012 Amadio declaration, which attempts to recant his prior deposition testimony, simply substitutes for any prior, now-inconsistent, deposition testimony: VTNA presumes that the Amadio declaration, procured by its counsel on the eve of trial, simply eliminates <u>any</u> factual disputes or questions established in discovery – including but not limited to, his own deposition under oath on June 23rd, 2009. (Exhibit P2 to plaintiff's LR 56.1 Response) In his deposition, Amadio testifies that he never saw initial recall notices, and first saw the second notices of EGR recalls in October or November of 2006. (Ex. P2, pp. 73-74); In his declaration he says that he was shown the initial notices as soon as he started to work at Chicago logistics in the Spring of 2006. Most every substantive assertion in the 2012 Amadio Declaration is completely at odds with his 2009 testimony.

But VTNA is not the first party to ever proffer to a court a declaration or affidavit that contradicts the affiant's prior deposition testimony in order to win a summary judgment motion (or to defeat one by trying to <u>create</u> an issue of fact). The gambit is a common one, but the courts are on to it: "[w]hen a party makes damaging admissions in his deposition and then tries to retract them in an affidavit, <u>courts give short shrift to</u>

the affidavit." *Seshadri v. Kasrian*, 130 F. 3d 798,801 (7th Cir. 1997)(emphasis added). The Supreme Court has also recognized that such affidavits usually are not credited on summary judgment motions:

> The lower courts, in somewhat comparable circumstances, have found a similar need for explanation. They have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.

*Cleveland v. Policy Mgmt Systems Corp*. 526 U.S. 795, 806 (1999)(emphasis added). The Seventh Circuit has further opined:

> Affidavits, though signed under oath by the affiant, are typically and here written by the affiant's lawyer, and when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy.

*Beckel v. Wal-Mart Associates, Inc*., 301 F. 3d 621 (7th Circuit 2002). (emphasis added). Here, the Amadio Declaration, which was pretty obviously prepared by VTNA's counsel, undisputably contradicts his deposition on whether his former employer ever received the original recall notice, when it first received the second recall notices here, and whether Chicago Logistics had actual notice of the recall by virtue of prior service work on other trucks. The 2012 Amadio declaration does contain at least a facially plausible reason for the 180 degree difference between the 2012 declaration and the 2009

deposition: intentional perjury (he was coerced by Chicago Logistics' owner)[1]. But a "plausible explanation for the discrepancy" does not *ipse dixit* establish the truthfulness of that declaration to the detriment of a sworn deposition, it only means that the Amadio declaration need not be dismissed out of hand and might have some evidentiary value. At most, a post-deposition contradictory affidavit, supported with at least a plausible excuse, may create an issue of fact and defeat a summary judgment. But even the post-deposition affidavit cannot refute a deposition conducted under oath and subject to cross examination: such a testimony is admissible at trial under Fed R. Civ P. 32. Which statement is to be believed, in light of all the circumstances, is still a question best left for a jury. Here especially it cannot be said that the 2012 Amadio declaration is more inherently believable than his testimony under oath and subject to cross ezamination, in 2009: at most the Amadio Declaration establishes that Amadio is not just a liar but a perjurer: In such a circumstance, no statement of his can be said as a matter of law to be so inherently trustworthy that it may eliminate an issue of fact. VTNA has offered up a self-serving declaration which does not resolve any fact issues, but merely muddies the water still further

But it is not just the contradictions between Amadio's own statements which defeat summary judgment here: Amadio's declaration is contradicted by the depositions of other witnesses. Chicago Logistics owner Scott Cordin testified that,

---

[1] Amadio was actually no longer working for Chicago Logistics at the time of his June 2009 deposition, the Company having been dissolved. He was not offered a position with a successor company (Ex. P2, p. 4) Why Amadio would perjure himself for a company that had just laid him off is not explained.

until he left the Company in mid-July 2006, Amadio worked only as a 'gopher' for the company and had no responsibility for vehicle maintenance: Amadio claims he had that responsibility from the day he joined the company in the Spring of 2006. Amadio's 2012 declaration blames greedy owners for refusing to take their trucks out of revenue service to get the recall work performed, while Cordin testified that the dealer who performed their truck maintenance, Labeau Brothers, would routinely send someone to pick the trucks up for service on Friday evenings and return them on Sundays so there <u>was no</u> business interruption,(Ex. P1, p. 13-14) . Cordin testified as to the procedures he as general manager had in place for recalls through July of 2006, that he did not recall receiving the initial recall notices at any time between January and July of 2006, that he would have relied upon the dealer to also inform him of a recall, and that if Chicago Logistics had received recall notices in early 2006 the repairs to all trucks would have been promptly performed (Ex. P1, p. 47) Amadio's Declaration, inherently suspect as a contrary post-deposition declaration, contradicts not just his prior testimony but other evidence. It should be given no credence, but even giving it some credence results in a factual dispute that should defeat this last minute dispositive motion.

### III. THE ECONOMIC LOSS RULE DOES NOT SHIELD VTNA FROM RESPONSIBILITY FOR ITS FAILURE TO COMPLY WITH ITS STATUTORY DUTIES

VTNA claims that the economic loss doctrine shields it from any liability in tort for this admittedly defective, now-completely-destroyed truck; even as it also asserts that the plaintiff is without any meaningful remedy under its purchase contract or

applicable warranties. The economic loss rule, often known as the Moorman doctrine (for *Moorman Mfg. v. National Tank Co.*, 91 Ill. 2d 69 (1982)) exists in recognition of a policy preference for allocating the expectations of a disappointed product purchaser through private contract, rather than tort, remedies. But this case, the Amended Complaint establishes that the plaintiff's loss arises from the breach of duty found neither in the common law of tort or contract, so the Moorman doctrine does not apply:

> The Illinois Supreme Court further explained that "[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for negligent breach of that duty

*Sliter v Cruttenden Roth Inc.*, 2000 WL 1745184 (N.D. Ill.) (quoting *Congregation of the Passion v. Touche Ross & Co.*, 159 Ill. 2d 137,162 (1994)) Such extracontractual duties often include fiduciary duties, but also encompass statutory duties. In *Golf v. Henderson*, 376 Ill. App. 3d 271 (2007) the plaintiff alleged that the defendants had violated the state Consumer Fraud Act. The Court determined that "the duties that plaintiff alleges were violated arose outside of any contract between the parties. Because these duties were extracontractual ... we find that plaintiff's cause of action is not barred by the economic loss rule." See *Country Mutual Insurance v. Carr*, 366 Ill App. 3d 758 (2006)(Claim against insurance broker for negligent breach of statutory duty to exercise care in placing insurance is not barred by the economic loss rule)

In this case, Count IV of the Amended Complaint clearly alleges violation of extracontractual duties imposed on VTNA by law: Plaintiff alleges that VTNA "knew or should have known, in the exercise of its duties at common law and under the

federal rules and regulations relating to safety recalls" that a defect existed (Doc. No. 77 at ¶45) that specifically alleged that VTNA "failed to reasonably comply with the federal statutes and regulations requiring prompt notice of safety defects," *Id*. at ¶48, and that if VTNA had complied with these statutory duties it "would have issued a stop shipment order which would have prevented the truck from being delivered to Chicago Logistics in an unreasonably unsafe condition." *Id.* at ¶49. These legal duties are clearly outside the terms of any purchase contract or warranty.

As the Court may recall, VTNA had previously challenged the plaintiff's reference to federal law and duties in the Amended Complaint (Doc. No. 80) but after considerable briefing regarding the effect of the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §30101 *et seq* (Doc. Nos. 82 and 83), this Court allowed plaintiff's failure to warn count and its allegations of breach of both statutory and common law duties (Opinion and Order, Doc. No. 100). Plaintiff has this consistently complained that VTNA breached various statutory and regulatory duties which, if properly discharged, would have prevented the sale of this defective truck just days before the recall finally did take effect. The duties imposed on VTNA were completely separate from any warranty obligations or common law duties as a seller of products – in fact the Safety Act expressly states that its provisions have no relation whatever to product warranties (see Doc no, 100 at 6). Because the Amended Complaint alleges the breach of statutory, non-contractual duties imposed on VTNA, summary judgment here cannot be predicated on the economic loss rule.

## IV. PLAINTIFFS' BREACH OF WARRANTY CLAIM REMAINS

VTNA, relying on a draft objection to a jury instruction, also claims that Plaintiff has abandoned its breach of warranty claim. To be sure, Plaintiff, in preparing the pretrial order, long after the deadline for filing dispositive motions had passed, did make stategic decisions to focus its resources and streamline its presentation to the jury. But then VTNA filed the instant (and, technically untimely) motion for summary judgment. At that point all bets were off, and VTNA cannot seriously expect that decisions plaintiff made about the presentation of evidence --after VTNA had lost four straight motions attacking the pleadings, and when the case was weeks away from going a jury on four live counts – are still valid.[2]

If anything, the range of contract-based remedies available to plaintiff has increased since this case was originally filed. The core claim remains unchanged since 2008: the truck failed due to a defect in manufacture and design, VTNA warranted to repair or replace defective trucks, and upon request, it failed to do so. That this particular defect, predictably, destroyed the entire truck, is the problem of the company that built and warranted the product, not the innocent purchaser. However, the addition of a failure to warn count, coupled with the undisputed factual allegations that VTNA knew, well before this truck was sold, that it contained a defect, and that under federal law it should never have placed this particular defective truck into the stream of commerce, admits of further actions. Every valid contract of course requires good faith

---

[2] Plaintiff's suggestion that it might stipulate that Chicago Logistics received the initial notices was another strategic decision that plaintiffs have now reconsidered in light of VTNA's Motion, especially after plaintiff's review of the case law and record evidence discussed in section II above.

and fair dealing by the parties. It also requires a mutuality of understanding as to essential terms. But neither was in place for this warranty, because even assuming that VTNA properly proved the terms of the applicable warranty[3] it sold the subject truck and issued its retrictive-filled warranty knowing (as Chicago Logistics did not) that all trucks like it had serious problems and a likelihood of a defect that could cause catastrophic failure. If anything the evidence suggests a more comprehensive breach of contract claim might now be appropriate, especially in light of the last minute challenge to the tort claims.

      VTNA claims that, as a matter of law, plaintiff's warranty-based claims because "the undisputed facts show that Chicago Logistics purposely ignored the Recall Notices, and thereby violated the terms of the written warranties." (Doc. No 148 , p. 6) This contention fails, for three reason: First, the claim that Chicago Logistics "ignored" the requests is based solely on the Amadio declarations, and so can hardly be considered "undisputed." Second, VTNA is assuming some linkage, as a matter of law, between those recall notices and its warranties. But a review of the language of the warranties and the recall notices reveals that neither document is referenced or incorporated in the other: the warranty documents do not specifiy the alactrity with which recall notices must be complied in order to receive warranty coverage; they do not even require compliance with recall notices at all, and the federal law requiring the recall specifically states that its remedies and requirements are separate from warranty obligations.

> **WARRANTY OBLIGATIONS AND ADDITIONAL LEGAL RIGHTS AND REMEDIES S**ections 30117(b), 30118-30121, 30166(f), and 30167(a) and (b) of this title do not establish or affect a warranty obligation under a law of the United States or a State. A remedy under those sections and sections 30161 and 30162 of this title is in addition to other rights and remedies under other laws of the United States or a State.

49 U.S.C. §30103(d)

    Here, the recall notices make no mention whatever of the VTNA warranties, and in fact they offer to make a modification to the truck (installation of a newly designed heat shield) that is not at all contemplated by the warranty, which offers only to "repair" or "replace" defective parts. VTNA thus fails to identify how a purchaser's alleged failure to comply with a voluntary recall notice (something that deals with potentially dangerous conditions) excuses it from complying with its obligations to product purchasers under its express warranty (something that covers actual defects). It provides no authority to support this novel linkage between a privately agreed upon warranty and a federally-required recall, in opposition to the clear wording of the Safety Act

    Third, in any event, the truly undisputed facts show that the wording of these "voluntary" recall notices were, for trucks which did not yet manifest an actual failed EGR pipe, written in suggestive, rather than mandatory language:

> The EGR valves to the cooler <u>may</u> fail ....<u>Precautions</u> You <u>Can Take</u> .... What you <u>Should do</u> .... [VTNA] strongly <u>recommends</u> that you follow the actions stated in the precautions section above until the heat shield is installed..."

(VTNA LR 56.1 Statement (emphasis added))

Here, there is no dispute that the subject truck did not exhibit any sign of the actual defect until the exhaust noise changed immediately before smoke and fire were detected by the driver on a congested I-55. (Ex. P4 pp. 90-91). Here, No driver training would have altered the outcome, and because even the Recall notice permitted the truck to be driven until an actual failure occurred, Chicago Logistics did not "fail" to comply with either the clear terms of the recall notice, or its warranty, in any way. VTNA keeps trying to claim that the claimed inadequacies of Chicago Logistics' response to the recall notice (or notices) it may or may not have received entitle it to judgment as a matter of law – but what it is really arguing is assumption of risk, and on these facts, that issue must be determined, if at all, by a trier of fact.

## V. VTNA'S RENEWED MOTION TO LIMIT RECOVERABLE DAMAGES FAILS.

Most of Section III of VTNA's motion is, literally, a cut and paste of the arguments it raised, unsuccessfully, in its motion to bar Recovery of Incidental and Consequential Damages (Doc. No 32, ¶¶5-8) which the court denied in April 2009 (Doc. No. 35) VTNA provides no reason for renewing these denied claims. Further,the Seventh Circuit has specifically noted that the question of whether to enforce disclaimers of consequential damages in a warranty is best addressed on a "case-by-case basis," taking into consideration the relative bargaining power of the parties and whether "the limited warranty fails to provide the benefits that the buyer expected."

S*mith v. Navistar Intern. Transp. Corp*. 957 F. 2d 1439 (7th Cir. 1992); see also *Razor v. Hyundai Motor America* 222 Ill.2d 75, (2006) (detailing the commons circumstances which will cause Illinois courts to void warranty limitations as procedurally or substantively unconscionable.) In any event, the amount of money expended litigating this issue far exceeds the value of the very minor damages claimed in this category: cleanup and towing costs.

**VI. NO ACTION OF THE PLAINTIFF CAN BE THE SOLE PROXIMATE CAUSE OF A FIRE WHICH EVEN VTNA CONCEDES WAS CAUSED BY A DEFECT**

VTNA's ultimate argument is that, as a matter of law, the sole proximate cause for this fire was not its admitted defect, or its failure to timely issue a stop shipment order for this truck. This argument first fails because, even more than the others, it relies on this Court giving complete credence to the 2012 Amadio declaration and no consideration to his earlier sworn testimony, or that of Scott Cordin. But it also fails because it cannot pass the straight face test: on the full record before this Court there is simply no way that this Court can grant summary judgment to defendant premised on a finding as a matter of law of "sole proximate cause" or the greater than 50% contributory negligence bar of Illinois law. VTNA's LR 56.1 statement <u>admits</u> that this truck contained a defect and the defect started the fire that destroyed the truck. (at ¶27). It cannot refute the credible evidence that well before it sold the subject truck, it had enough information about other EGR failures, warranty claims, and fires, that it should have never sold the subject truck under federal law. This case has been proceeding

toward trial on a narrow set of issues for more than 4 years and 4 prior despositive motions. It should be tried in May.

## VII. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment should be denied with prejudice.

WHEREFORE, the Plaintiff, Great West, respectfully requests that this Honorable Court enter an order dismissing VTNA's Motion (Docs. #: 147–49) with prejudice, and granting any other just and equitable relief.

Respectfully Submitted,
Great West Casualty Company

By: \s\Patrick J. Keating
KEATING LAW GROUP LLC

Patrick J. Keating
KEATING LAW GROUP LLC
230 West Monroe Street, Suite 2221
Chicago, Illinois 60606
312. 759. 7518 direct
312. 759. 7516 fax
pjk@keatinglawgroup.com