**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GREAT WEST CASUALTY COMPANY, as subrogee of CHICAGO LOGISTICS, LLC<br><br>Plaintiff,<br><br>vs.<br><br>VOLVO TRUCKS NORTH AMERICA, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 08-cv-2872

Judge Joan H. Lefkow

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Great West Casualty Company ("Great West"), as subrogee of Chicago

Logistics, LLC ("Chicago Logistics"), filed a four-count amended complaint against defendant,

Volvo Trucks North America, Inc. ("Volvo") asserting claims for strict products liability (count

I), negligence (count II), breach of written (express) warranty (count III), and failure to warn

(count IV).[1] The present dispute arises from an incident in which a Volvo truck owned by Great

---

[1] Great West alleges that it brings this action "pursuant to an assignment by way of subrogation" and that it is "subrogated to all claims and rights of Chicago Logistics." Am. Compl. 1. Great West additionally alleged Chicago Logistics' citizenship based on its principal place of business but omitted the citizenship of Chicago Logistics' members. *See Thomas* v. *Guardsmark*, LLC 487 F.3d 531, 534 (7th Cir. 2007) ("For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members."). The omission of the citizenship of the members is not fatal to establishing jurisdiction, however, because, according to the pleading, Chicago Logistics is not a party-in-interest in this litigation. *See Cars R Us Sales & Rentals, Inc.* v. *Ford Motor Co.*, No. 08 C 50270, 2009 WL 1703123, at *2 (N.D. Ill. June 18, 2009) (citing Illinois cases) (Under Illinois law, an insurer with subrogation rights to an insured's claim owns that claim and is a real party in interest; the insured-subrogor is also a real party in interest if it retains an interest in the claim.) Because Great West alleges that "it is subrogated to all claims" of Chicago Logistics, Chicago Logistics' citizenship is unnecessary for pleading diversity jurisdiction. Volvo and Great West are of diverse citizenship. Thus, this court has jurisdiction pursuant to 28 U.S.C. § 1332 and venue is appropriate under 28 U.S.C. § 1391(b).

West's insured caught fire because of an engine defect.  Before the court is Volvo's motion for summary judgment.  For the reasons that follow, Volvo's motion is granted with respect to counts I, II, and IV, denied with respect to count III, and, should Great West prevail on its breach of warranty claim in count III, it will be precluded from recovering consequential and special damages.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (a).  To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.  Fed. R. Civ. P. 56(e) & advisory committee notes (1963 amend.)  While the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is factually unsupported, it should be disposed of on summary judgment.  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## BACKGROUND[2]

### I.      The Sale of Truck 508 and the Ensuing Fire

Volvo manufactures and distributes commercial trucks in the United States.  On January 9, 2006, Chicago Logistics purchased eight of Volvo's trucks from LaBeau Brothers,

---

[2] The facts in the background section are taken from the parties' Local Rule 56.1 statement of facts and stated in the light most favorable to Great West.

Inc. ("LaBeau Brothers"), an authorized Volvo dealer that handled most of the maintenance work for Chicago Logistics' Volvo trucks. One of those trucks was a 2006 Volvo VNL 64T truck, identified by Chicago Logistics as Truck 508.

On January 20, 2006, Volvo reached a preliminary conclusion that a defect existed in the exhaust gas recirculation system (the "EGR system") of its 2006 Volvo VNL 64T model which if unrepaired could result in an engine fire. On January 25, 2006, Volvo confirmed that the defect existed. Between August 2003 and January 10, 2006, Volvo received 358 warranty claims relating to the defect. On November 6, 2006, the engine of Truck 508 caught fire on Interstate 55 in Stickney, Illinois and the truck was damaged. The fire in Truck 508 was a result of the defect in its EGR system.

## II.     The Warranty Agreements

In connection with the sale of the Volvo trucks, Volvo issued four warranties to Chicago Logistics:  a Standard Truck Warranty Certificate ("Truck Warranty"); a Standard Volvo Engine Warranty Certificate ("Engine Warranty"); an Extended (Purchased) Volvo Engine Coverage Certificate ("Extended Engine Coverage"); and a Warranty Registration covering the truck. The Truck Warranty, Engine Warranty and Extended Engine Coverage all contained the following language,

> Volvo Trucks North America, Inc. warrants certain individual components of the new Volvo truck to be free from defects in material and workmanship under normal use and service up to the periods specified, provided all Volvo Trucks North America, Inc. maintenance requirements found in the Operator's Manual and service manuals are followed.[3]

_____

[3] The first paragraphs of the Truck Warranty, Engine Warranty, and Extended Engine Coverage are largely the same. The Engine Warranty and Extended Engine Coverage provide that "Volvo Trucks

(continued...)

\*\*\*

**LIMITATIONS** – Volvo Trucks North America, Inc.'s obligation is limited to, at its option, repair or replacement of parts which are acknowledged by it to be defective.

\*\*\*

Warranty consideration can only be given if the deficiency is brought to the attention of an authorized Volvo Truck dealer immediately upon discovery during the warranty period.

**NO PAYMENT OR OTHER COMPENSATION WILL BE MADE FOR CONSEQUENTIAL, INDIRECT, OR INCIDENTAL EXPENSES OR DAMAGES OF ANY KIND**

**EXCLUSIONS:**

**1. REPAIR:** Warranty consideration can only be given if the deficiency is brought to the attention of an authorized Volvo Truck dealer upon discovery and the truck must be made available, in a timely fashion during the warranty period, for repair. Failures resulting from the user's unreasonable delay in making the truck available, after being notified of a potential product problem, are not covered.

\*\*\*

**3. DAMAGES:** Damages due to accidents, misuse, negligence, improper operations, alterations, storage or transport, operation at excessive speeds, loading beyond the factory rated load capacity, and improper or insufficient maintenance services are not covered. Damages due to the failure to follow Volvo Trucks North America, Inc. service procedures are considered damages due to improper maintenance services.

(Dkt. 149-1, at 13–18.) The Warranty Registration contained a provision that limited remedies

in case of a breach,

---

[3](...continued)
North America, Inc. warrants certain individual components of each new Volvo engine in a new Volvo truck to be free from defects in material and workmanship under normal use and service up to the periods specified, provided all Volvo Trucks North America, Inc. maintenance requirements are followed." (Dkt. 149-1, at 14, 16.)

## LIMITATION OF REMEDIES

IN NO EVENT SHALL VOLVO TRUCKS NORTH AMERICA, INC. OR ITS DEALERS BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF INCOME, DOWNTIME EXPENSES AND ANY OTHER COMMERCIAL LOSSES, UNLESS EXPRESSLY PROVIDED OTHERWISE IN THIS WARRANTY. THE BUYER'S REMEDY IS LIMITED TO REPAIR OR REPLACEMENT OF THE PART OR COMPONENT WHICH IS DETERMINED DEFECTIVE IN NORMAL USE. THE STANDARD TRUCK AND VOLVO ENGINE WARRANTY CERTIFICATES CONTAIN THE SOLE AND EXCLUSIVE WARRANTIES FOR VOLVO TRUCKS AND VOLVO ENGINES.

(Dkt. 149-1, at 19.). Scott Cordin, the general manager of Chicago Logistics, signed the Warranty

Registration acknowledging receipt of the warranties and acceptance of their terms and conditions.

## III. The Recall Notices

In February 2006, in response to the defect discovered in the EGR system of its 2006

VNL 64T model, Volvo issued a recall notice ("Volvo Safety Recall RVXX0601") to registered

owners. The notice stated that the defect could be fixed by installing a heat shield. The notice

further provided,

Volvo Trucks North America has decided that a defect which relates to motor vehicle safety exists in certain Volvo VHD, VNL, and VNM model vehicles manufactured with a Volvo D12 Engine from November 2002 through January 2006. These vehicles may be subject to a safety issue in the event that an Exhaust Gas Recirculation ("EGR") Cooler Pipe becomes damaged or loose.

**SAFETY DEFECT:**

The EGR cooler inlet pipes and/or the pipes that connect the EGR valves to the cooler may fail (crack or break).

**SAFETY RISK:**

If a pipe fails and is left untreated, the air cleaner and inner fender may be exposed to hot exhaust gases, which could potentially lead to a fire.

**PRECAUTIONS YOU CAN TAKE:**

**WARNING!**

Owners **must** make driver(s) aware that advance warning in the form of additional noise from under the hood suggests a potential EGR cooler pipe exhaust leak that warrants **immediate inspection** of the pipes.[4] The driver must stop the vehicle immediately in a safe location and inspect the pipes according to the included inspection instructions (see page 3) . . . Failure to take these precautions and to also advise drivers may result in a fire.

**WHAT YOU SHOULD DO**

You should contact the nearest Volvo Parts and Service Center and make an appointment. The vehicle will be inspected and a heat shield will be installed at **no charge** to you . . . Volvo Trucks North America **strongly recommends** that you follow the actions stated in the precaution section above until the heat shield is installed. If your vehicle has the aforementioned condition (pipe separated or broken), **you should not operate the vehicle** and should contact the Volvo Action Service Support Center at 1-877-800-4945 for further instructions.

(Dkt. 149-1, at 26–29) (emphasis in original).

In the spring of 2006, Cordin had day-to-day oversight over truck maintenance issues and items such as recall notices. Cordin testified at his deposition that he had no recollection of the safety recall notices from Volvo. Cordin further testified that if he had received the safety recall notices, he would have called LaBeau Brothers to arrange for the repairs. Thomas Amadio, Fleet Manager for Chicago Logistics from 2006 to 2009,[5] testified at his June 23, 2009 deposition that Chicago Logistics never received the recall notices sent in the spring of 2006. In 2012, however, Amadio contacted Volvo's counsel and admitted to having received eight copies of the recall

---

[4] Lorenzo Starks, the Chicago Logistics employee who drove Truck 508, stated that it did not make any unusual noises or show signs of a cracked EGR pipe until the engine began smoking.

[5] In July 2006, Cordin left Chicago Logistics. Cordin testified that Amadio would not have had responsibility for truck maintenance before that time.

notices.[6]  In a declaration dated August 29, 2012, Amadio avers that at or about the time he received the first recall notice he showed it to Gary Verhoeven, his supervisor and an owner of Chicago Logistics.  According to Amadio, Verhoeven instructed him not to have any of the Volvo trucks repaired to fix the defect.  Verhoeven wanted to keep the trucks on the road and earning money.

In the spring and summer of 2006, LaBeau Brothers installed heat shields in several of Chicago Logistics' other Volvo VNL 64T trucks to remedy the defect identified in Volvo Safety Recall RVXX0601.  After performing the repairs, LaBeau Brothers sent Chicago Logistics invoices or warranty copy pages stating that the trucks had been inspected pursuant to the recall notices and that LaBeau Brothers had installed heat shields.  Chicago Logistics' accounts payable department handled the paperwork received from LaBeau Brothers, but its maintenance personnel never saw this paperwork.  Cordin testified that he did not recall seeing, receiving, or reviewing the paperwork sent by LaBeau Brothers that detailed the recall warranty repair work on other Volvo VNL 64T trucks.

In September 2006, Volvo sent a second safety recall notice (Volvo Safety Recall RVXX0601) to registered owners of Volvo VNL 64T trucks who had not had their trucks repaired in response to the first recall notice.  The second notice included the same information as the first.  In addition, the second safety recall notice provided,

---

[6]  The parties dispute why Amadio submitted a declaration that contradicted his earlier deposition testimony.  Volvo contends that Chicago Logistics threatened to terminate his employment unless he covered up receiving the recall notices.  Great West counters that Chicago Logistics had already dissolved by the time of Amadio's deposition.

> Our records show that you have not had your vehicle repaired. This is a follow-up notice to remind you of the importance of having your vehicle corrected by making an appointment with an authorized Volvo Truck Dealer.

(Dkt. 149-1, at 30). Amadio testified at his 2009 deposition that he did not see the second recall notice until October or November 2006. Amadio, however, averred in his 2012 declaration that approximately three weeks before the November 6, 2006 fire, he received three copies of the second safety recall notice. Amadio showed the copies of the second notice to Verhoeven, who again declined to have Chicago Logistics' Volvo trucks repaired. Chicago Logistics did not inform its drivers of the first or second safety recall notice before the November 6, 2006 fire.

After the fire, Chicago Logistics demanded that Volvo replace Truck 508 or provide it with the replacement value of Truck 508. Volvo denied Chicago Logistics' claim based on its failure to comply with the warranties' terms. Great West provided property damage insurance to Chicago Logistics and, as the insurer, it paid Chicago Logistics $94,500 as a settlement for its loss. Great West subsequently sold Truck 508 at salvage for $6,500 and incurred towing and recovery fees of $3,465. As the subrogee of the loss sustained by Chicago Logistics, Great West seeks recovery for damage to the engine, as well as the cost of repair/replacement of the Truck and other incidental and consequential damages.

## ANALYSIS

## I.     Great West's Authentication Objections

In its response to Volvo's Local Rule 56.1 statement of facts, Great West argues that Volvo failed to authenticate the warranties and recall notices. In resolving a motion for summary judgment, a court may consider "properly authenticated and admissible documents or exhibits." *Woods* v. *City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Federal Rule of

Evidence 901(a) applies when determining authenticity, which requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Smith* v. *City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001) (internal quotation marks omitted). Volvo previously submitted an affidavit during the motion to dismiss briefing authenticating the Truck Warranty and the Engine Warranty, Dkts. 23-2; 18-2, and Volvo also attached an affidavit to its reply authenticating the Extended Engine Coverage and the Warranty Registration. Dkt. 162-1, at 19–20. Amadio also authenticated the recall notices in his affidavit. *See* Dkt. 149-1, at 22–25. There is no apparent dispute that the documents are what they purport to be, so they will be considered in deciding the pending motion.

## II.     The Tort Claims (Counts I, II, and IV)

Volvo argues that Chicago Logistics' remedy lies in contract law and its request for tort damages under theories of strict liability, failure to warn, and negligence are barred by the doctrine articulated by the Illinois Supreme Court in *Moorman Manufacturing Company* v. *National Tank Company*, 435 N.E. 2d 443, 91 Ill. 2d 69, 61 Ill. Dec. 746 (Ill. 1982) ("the *Moorman* doctrine," also called "the economic loss doctrine"). The *Moorman* doctrine precludes recovery of purely economic losses in tort for failure to fulfill contractual obligations. *See Wigod* v. *Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012); *Catalan* v. *GMAC Mortg. Corp.*, 629 F.3d 676, 692–93 (7th Cir. 2011); *Rardin* v. *T & D Machine Handling*, 890 F.2d 24, 27–28 (7th Cir. 1989). *Moorman* defines "economic loss" as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits–without any claim of personal injury or damage to other property[,] as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for

which it was manufactured and sold." *Moorman*, 435 N.E. 2d at 449 (quotation marks, ellipsis, and citations omitted).

### A.    Whether Great West Seeks Recovery for Damage to Property Other Than Truck 508

Where only the defective product itself is damaged, the *Moorman* doctrine applies and the aggrieved party is limited to recovery under contract law. *Trans States Airlines* v. *Pratt & Whitney Canada, Inc.*, 682 N.E. 2d 45, 54–55, 177 Ill. 2d 21, 224 Ill. Dec. 484 (Ill. 1997). This is so because "when the product damages itself only, the risks against which products liability law was designed to protect simply are not realized." *Id*. at 54. Great West argues, however, that the damage to Truck 508 was separate from the damage to the engine within; *i.e.*, the truck was *other property* excluded from the bar of the *Moorman* doctrine. This argument is foreclosed by *Trans States Airlines*. There, the plaintiff alleged tort and contractual theories of recovery after an airplane engine caught fire damaging itself and the surrounding airframe. The plaintiff was the lessor of the aircraft and sought damages for costs of repair of the engine and airframe, lost revenues, and other damages. *Trans States Airlines*, 682 N.E. 2d at 46–47. To avert the *Moorman* doctrine, the plaintiff argued that the engine and airframe were two separate products. *Id*. at 55. The Illinois Supreme Court rejected that argument and held that the airframe and engine constituted a single product. *Id*. at 58. After looking to the terms of the lease agreement, the Court reasoned that the plaintiff bargained for a fully integrated aircraft. *Id*. It did not bargain piecemeal for an engine and a separate airframe. *Id*.[7]

---

[7]*Trans States Airlines* was before the Illinois Supreme Court as a result of the Seventh Circuit's certifying questions regarding the *Moorman* doctrine for an interpretation of Illinois law. *See Trans States Airlines*, 682 N.E. 2d at 46; *Trans States Airlines* v. *Pratt & Whitney Canada, Inc.*, 86 F.3d 725, 726–27 (7th Cir. 1996); *Trans States Airlines* v. *Pratt & Whitney Canada, Inc.*, 130 F.3d 290, 292 (7th

(continued...)

10

Similar to *Trans States Airlines,* here, a defect in Truck 508's engine started the fire that damaged the truck. Great West does not contend that it purchased the engine separately from the other components of Truck 508; rather, the parties' bargain was for an entire truck. Because Great West purchased a single product, the *Moorman* doctrine applies and precludes recovery in tort. *See*, *e.g.*, *Trans States Airlines*, 682 N.E. 2d at 52 ("Damage to the product itself only means that the product has not met the customer's expectations, or that the customer did not receive the benefit of his bargain.") (citing *East River S.S. Corp.* v. *Transamerica Delaval, Inc.*, 476 U.S. 858, 872, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986)).

## B. Whether Volvo Had An Extracontractual Duty Arising Outside the Warranties

Relying on allegations in Count IV that Volvo violated federal rules and regulations requiring prompt notice of safety defects by selling a product that it knew or should have known had a defective component (Am. Compl. 7–8), Great West argues that Volvo owed it a duty arising outside of the warranties which would also allow it to bypass the *Moorman* doctrine. The *Moorman* doctrine does not apply "'[w]here a duty arises outside of the contract'" because it "does not prohibit recovery in tort for the negligent breach of that duty.'" *Wigod*, 673 F.3d at 567 (quoting *Congregation of the Passion, Holy Cross Province* v. *Touche Ross & Co.*, 636 N.E. 2d 503, 514, 159 Ill. 2d 137, 201 Ill. Dec.71 (Ill. 1994)).[8] The key question in determining

---

[7](...continued)
Cir. 1997) ("The Illinois Supreme Court's opinion has definitively resolved the question whether there is one product or two in the case before us, and it has found that there is only one.").

[8] Illinois courts have recognized other exceptions to the *Moorman* doctrine. Those exceptions include instances where (1) the plaintiff suffers personal injury or property damage as the result of a sudden or dangerous occurrence; (2) the plaintiff's damages result from an intentional or false representation or fraud; and (3) the plaintiff's damages result from a negligent representation in a

(continued...)

whether a duty is extracontractual is whether it arose by operation of the contract or existed

independently.  *Id.*

Great West contends that federal statutes and regulations place an extracontractual duty

on Volvo separate from that imposed by the warranties.  In its response, Great West cites to the

National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 30101 *et seq.* ("the Safety Act"),

and argues that the Safety Act creates a statutory duty separate from the warranty agreements

that

required Volvo promptly to issue recall notices regarding safety defects.[9]  Had Volvo complied

with the Safety Act by promptly issuing a recall notice, argues Great West, it would have issued

a stop shipment order preventing delivery of the vehicles to Chicago Logistics in an unsafe

condition.

The Safety Act created procedures obligating a manufacturer of a motor vehicle to notify

the Secretary of Transportation in addition to dealers and purchasers within a reasonable period

of time after learning of a defect in a product relating to motor vehicle safety.  49 U.S.C.

§ 30118(c); 30119(c).  The Secretary of Transportation may conduct a hearing to determine

---

[8](...continued)
professional arena from one who supplies or gives information as part of his or her business to others as
part of their business dealings (*i.e.*, professional malpractice claims).  *See In re Chicago Flood Litig.*, 680
N.E. 2d 265, 275, 176 Ill. 2d 179, 223 Ill. Dec. 532 (Ill. 1997) (internal citations omitted).  Great West, in
a cursory fashion, notes in its response to Volvo's Local Rule 56.1 statement of facts that it seeks
damages for false representations, but it never alleges such a claim nor identifes specific
misrepresentations.  Accordingly, the court will not consider this argument.

[9]  Great West also notes that the court previously allowed its tort claims to stand after
considerable briefing regarding the effect of the Safety Act.  *See* Dkt. 100; Great West Resp. at 9.  That
briefing, however, addressed whether the Safety Act preempted Great West's tort claims and did not
examine whether the Safety Act imposed an extracontractual duty on Volvo separate from the warranties.

whether the manufacturer "reasonably met" the notification requirement. *Id.* § 30118(e). The

Attorney General may also bring a civil action to enforce the notification provision in the Safety

Act. *Id.* §§ 30121(b); 30163(a). The Safety Act, however, does not create a private right of

action. *See Ayres* v. *Gen. Motor Corp.*, 234 F.3d 514, 522–23 (11th Cir. 2000); *see also*

*Catalan*, 629 F.3d at 693 ("These exceptions [to the economic loss doctrine] have in common the

existence of an extra-contractual duty between the parties, giving rise to a cause of action in tort

separate from the one based on the contract itself.").

Great West cannot maintain an action for violating the Safety Act's notice provisions as

none exists. The plaintiffs in the cases upon which Great West relies in invoking the

extracontractual duty exception to the *Moorman* doctrine identified a specific fiduciary duty or a

statutorily enacted duty that created a right of action separate from the contract itself.[10] Indeed,

Great West's recovery stems solely from the damage resulting to Truck 508 and not from

Volvo's alleged failure to comply with the Safety Act's notification procedures. Great West's

damages are the sole product of a disappointed commercial undertaking embodied in Volvo's

alleged failure to abide by the warranties. The *Moorman* doctrine bars Great West from

recovering damages under tort theories of liability for purely economic loss. Accordingly,

---

[10] *See Sliter* v. *Cruttenden Roth, Inc.*, No. 00 C 3845, 2000 WL 1745184, at *6 (N.D. Ill. Nov. 27, 2000) (declining to find a fiduciary duty between an underwriter of securities and stock purchasers that would support a negligent misrepresentation claim); *Golf* v. *Henderson*, 876 N.E. 2d 105, 113, 376 Ill. App. 3d 271, 315 Ill. Dec. 105 (Ill. App. Ct. 2007) (the plaintiff's cause of action for damages under the Illinois Consumer Fraud Act arose outside any contract between the parties making the *Moorman* doctrine inapplicable); *Country Mutual Ins. Co.* v. *Carr*, 852 N.E. 2d 907, 914–16, 366 Ill. App. 3d 758, 304 Ill. Dec. 451 (Ill. App. Ct. 2007) (the plaintiff's claim for breach of the duty to provide ordinary care in procuring insurance codified in 735 ILL. COMP. STAT. 5/2-2201(a) was extracontractual precluding application of the *Moorman* doctrine) *vacated on others grounds by In re Country Mut. Ins. Co.*, 889 N.E. 2d 209, 210, 321 Ill. Dec. 305 (Ill. 2007).

Volvo is entitled to summary judgment on counts I, II, and IV.[11]

## III.     The Express Warranty Claim (Count III)

Great West claims that Volvo breached the express written warranties by selling defective vehicles.  Volvo argues that Great West's breach of express warranty claim fails because Chicago Logistics was aware of the defect before the fire and its failure to have Truck 508 repaired precludes it from recovering damages.  Great West argues that summary judgment is inappropriate because whether Chicago Logistics knew about the defect before the fire is a question of fact.[12]

Article 2 of the Illinois (Uniform) Commercial Code ("UCC") applies to this transaction because it was a sale of goods.  *See* 810 ILL. COMP. STAT. 5/2-102; *Smith* v. *Navistar Int'l Transp. Corp.*, 957 F.2d 1439, 1442 n.5 (7th Cir. 1992); *Razor* v. *Hyundai Motor Am.*, 854 N.E. 2d 607, 615, 222 Ill. 2d 75, 305 Ill. Dec. 15 (Ill. 2006).  Under the UCC, a seller may create an express warranty through "[a]ny affirmation of fact or promise . . . which relates to the goods and becomes part of the basis of the bargain."  810 ILL. COMP. STAT. 5/2-313(a); *Mydlach* v. *DaimlerChrysler Corp.*, 875 N.E. 2d 1047, 1058, 226 Ill. 2d 307, 314 Ill. Dec. 760 (Ill. 2007) ("[A]n express warranty . . . obligates the seller to deliver goods that conform to the affirmation, promise, description, sample or model.").  In the warranties, Volvo created an express warranty

---

[11]  Because the court concludes that the *Moorman* doctrine bars Great West's tort claims, it need not consider Volvo's alternative argument that Great West cannot recover tort damages because its conduct caused Truck 508's fire.

[12]  The parties also dispute whether Great West's counsel agreed to withdraw count III.  Great West's counsel contends that he initially indicated to Volvo's counsel that Great West would not pursue this claim at trial but never formally withdrew this claim.  Although Great West discussed dismissing count III, it never formally did so and the court will thus consider the parties' argument as to the viability of count III.

that "certain individual components of the new Volvo [truck or engine were] free from defects in material and workmanship."  (Dkt. 149-1, at 12, 14, 16).

To prevail on its breach of express warranty claim, Great West must establish that the product contained a defect covered by the warranty, it complied with the warranty's terms, Volvo had a reasonable opportunity to perform the necessary repairs, and Volvo was unable to repair the defect within a reasonable time or after a reasonable number of attempts.  *See Oggi Trattoria & Caffe, Ltd.* v. *Isuzu Motors Am., Inc.*, 865 N.E. 2d 334, 340, 372 Ill. App. 3d 354, 310 Ill. Dec. 10 (Ill. App. Ct. 2007).  Express warranties are contractual and the language in the warranty "is what controls and dictates the obligations and rights of the various parties."  *Id*.

The parties dispute whether Chicago Logistics complied with the warranties' terms. Great West notes that Volvo knew about the design defect before the January 9, 2006 sale to Chicago Logistics because it had received 358 warranty claims relating to the recall between August 2003 and January 10, 2006.  Volvo argues that it only confirmed the defect on January 26, 2006, after the January 9, 2006 sale.  Nonetheless, Volvo argues that Great West cannot recover for breach of an express warranty because Chicago Logistics failed to have the defect in Truck 508 timely repaired.  The language of the warranties is clear that to obtain the benefit of warranty coverage customers (such as Chicago Logistics) had to bring the vehicles for repair after learning of a defect.  The warranties specifically provided that "Warranty consideration can only be given if the deficiency is brought to the attention of an authorized Volvo Truck dealer immediately upon discovery during the warranty period."  (Dkt. 149-1, at 13, 15, 17).  They further provided that "[f]ailures resulting from the user's unreasonable delay in making the truck available, after being notified of a potential product problem, are not

15

covered." (*Id.*). The key question is thus whether Chicago Logistics knew about the design defect but failed to respond to the recall notices.

Volvo contends that there is no genuine issue of fact that Chicago Logistics received the notices and failed to make Truck 508 available for repair. It bases this argument on the affidavit of Amadio, who repudiated earlier deposition testimony that Chicago Logistics did not receive the notices. Amadio's 2012 declaration revealed that Chicago Logistics received the recall notices in the spring and fall of 2006.[13] Amadio's 2012 declaration, argues Great West, is not conclusive evidence that Chicago Logistics received the recall notices because it is inconsistent with his 2009 deposition.[14] Because Amadio's declaration contradicts his earlier deposition, the declaration merely creates a question of fact as to when Chicago Logistics learned about the recall notices. *See Payne* v. *Pauley*, 337 F.3d 767, 773 (7th Cir. 2003).[15] Accordingly, summary

---

[13] Volvo also submitted a draft of the final pre-trial order where Great West stipulated to receiving the first recall notice in the spring of 2006 and the second recall notice on or about September 20, 2006. Because this document was still a draft and never filed with the court, the court will not consider it a binding judicial admission conclusive on this disputed point. *See Murrey* v. *United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) (discussing the difference between judicial admission made in court filings such as pleadings or requests to admit that normally are conclusive and extrajudicial statements that constitute evidence but are not conclusive).

[14] Amadio's declaration cannot simply be disregarded because it is inconsistent with his prior sworn testimony. *Compare Cowan* v. *Prudential Ins. Co. of Am.*, 141 F.3d 751, 756 (7th Cir. 1998) ("[A]n affidavit is not meritless if it is demonstrable that the statement in the deposition was mistaken[.]") (internal quotation marks omitted); *Slowiak* v. *Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir. 1993) ("A subsequent affidavit may be used to clarify ambiguous or confusing deposition testimony, or it may be based on newly discovered evidence.") *with Seshadri* v. *Kasraian*, 130 F.3d 798, 801 (7th Cir. 1997) ("When a party makes damaging admissions in his deposition and then tries to retract them in an affidavit, courts give short shrift to the affidavit."). This is not a case where a party submitted an after-the-fact affidavit to cure deficiencies in its witness's deposition testimony. Instead, Amadio was an adverse witness who retracted deposition testimony favorable to Great West with a declaration supporting Volvo's case. A jury may decide which of the statements is truthful.

[15] In addition, while Volvo argues that LaBeau Brothers' performing repairs identified in the recall notices on other Chicago Logistics' Volvo VNL 64T trucks shows that Chicago Logistics had knowledge of the recall, Great West contends that Chicago Logistics never received notice from LaBeau

(continued...)

judgment is denied with respect to count III.

## IV.    Limitation of Consequential or Special Damages

Volvo contends that if Great West can recover for breach of express warranty, it cannot recover for consequential, indirect, or incidental damages because of a disclaimer provision. Great West argues that the effectiveness of a damages disclaimer is an *ad hoc* inquiry that looks to the relative bargaining power of the parties involved and whether the limited warranty fails to protect the benefits of the buyer's bargain.

The UCC allows an aggrieved buyer to recover  consequential and incidental damages. 810 ILL. COMP. STAT. 5/2-715(1) & (2).[16]  The parties to a sales contract can agree to an exclusive remedy limiting the buyer's remedy to repair and replacement of nonconforming parts while also excluding consequential or incidental damages.  *See* 810 ILL. COMP. STAT. 5/2-719(1).  If the parties make such an agreement, the exclusive remedy is the sole remedy unless the exclusive remedy fails of its essential purpose or is unconscionable.  *See* 810 ILL. COMP. STAT. 5/2-719(1)(b); (2); (3); *S. Ill. Riverboat Casino Cruises, Inc.* v. *Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 676 (7th Cir. 2002).

The first inquiry is to determine whether the warranties provide for an exclusive remedy.

---

[15](...continued)
Brothers about the recall and did not learn about the defect in Truck 508's EGR system until the fire occurred.

[16]  Consequential damages are defined as "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and injury to person or property proximately resulting from any breach of warranty."  810 ILL. COMP. STAT. 5/2-715(2).  Incidental damages "resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach."  810 ILL. COMP. STAT. 5/2-715(1).

The Warranty Registration limited the remedy, stating,

> IN NO EVENT SHALL VOLVO TRUCKS NORTH AMERICA, INC. OR ITS DEALERS BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF INCOME, DOWNTIME EXPENSES AND ANY OTHER COMMERCIAL LOSSES, UNLESS EXPRESSLY PROVIDED OTHERWISE IN THIS WARRANTY. REPAIR OR REPLACEMENT OF THE PART OR COMPONENT WHICH IS DETERMINED DEFECTIVE IN NORMAL USE.

(Dkt. 149, at 19.) The language of the Warranty Registration is clear that the parties agreed to an exclusive remedy that limited the remedy to repair or replacement of the defective part or component. *See Intrastate Piping & Controls, Inc.* v. *Robert-James Sales, Inc.*, 733 N.E. 2d 718, 724, 315 Ill. App. 3d 248, 248 Ill. Dec. 43 (Ill. App. Ct. 2000) ("Illinois courts have recognized and enforced exclusive remedy provisions, even without the word exclusive, when the contract as a whole warrants such a construction.") (internal quotation marks omitted). The limited remedy also disclaimed consequential or special damages.[17]

Whether Volvo's refusal to repair or replace Truck 508 resulted in the exclusive remedy's failing its essential purpose is still disputed. Nonetheless, a damages disclaimer provision can be enforceable even when a limited remedy fails of its essential purpose. The Illinois Supreme Court has adopted an independent approach that upholds a disclaimer of a remedy for consequential damages notwithstanding a limited remedy's failure of its essential purpose, unless the disclaimer is unconscionable. *Razor*, 854 N.E. 2d at 618–19. Under this approach, a limited remedy provision and a disclaimer of consequential damages are independent and the failure of the former will not automatically affect enforcement of the latter. *Id.*[18] Under

---

[17] Moreover, each of the warranties also disclaims consequential, indirect, or incidental damages. (Dkt. 149-1, at 13, 15, 17).

[18] When a limited remedy fails of its essential purpose but also includes a provision disclaiming

(continued...)

Illinois law, "a contract may be found to be unconscionable as a matter of law based on either a 'procedural' or 'substantive' basis, or both." *Estate of Davis* v. *Wells Fargo Bank*, 633 F.3d 529, 535 (7th Cir. 2011) (quoting *Razor*, 854 N.E. 2d at 622). Procedural unconscionability takes into account a party's lack of bargaining power and arises in situations where a contract term "is so difficult to find, read, or understand that the party could not fairly be said to have been aware she was agreeing to it." *Id*. (citing *Razor*, 854 N.E. 2d at 622). Substantive unconscionability occurs where terms to a contract "are inordinately one-sided in one party's favor." *Id*. (citing *Razor*, 854 N.E. 2d at 622).

Here, the provision in the Warranty Registration excluding consequential and special damages passes muster. The sales transaction was commercial in nature and its plain language indicates that Volvo, as the seller, did not intend to bear the risk of consequential or special damages. Great West has also not argued that it lacked bargaining power *vis-a-vis* Volvo such that the court should ignore the damages exclusion provision. Indeed, Cordin, Chicago Logistics' general manager, read and signed the Warranty Registration including the disclaimer. Based on these facts, the court is not willing to rewrite the parties' agreement and will enforce the exclusion provision. *See Navistar*, 957 F.2d at 1445 ("We have failed to discover evidence

---

[18](...continued)
consequential damages, the Seventh Circuit has advocated a case-by-case approach that looks to "the individual factual situation including the type of goods involved, the parties and the precise nature and purpose of the contract" to determine whether to enforce the damages disclaimer. *AES Tech. Sys., Inc.* v. *Coherent Radiation*, 583 F.2d 933, 941 (7th Cir. 1978); *see also Navistar*, 957 F.2d at 1444 ("The case-by-case approach adopted by *AES* and the other decisions allow some measure of certainty in that parties of relatively equal bargaining power can allocate all of the risks that may accompany a breach of warranty, and prevents the court from upsetting that allocation upon a breach of contractual duties."). The Illinois Supreme Court, however, has criticized the case-by-case approach articulated by the Seventh Circuit and declined to adopt it. *See Razor*, 854 N.E. 2d at 618 ("We find the case-by-case approach injects uncertainty into the UCC, an area of the law in which uniformity and certainty are highly valued."). Instead of following the case-by-case approach, the Illinois Supreme Court adopted the independent approach. *Id*. at 618.

in the record that the parties intended that the defendants bear the risk of consequential damages or that the parties' relative bargaining power was so unequal that the disclaimer was unconscionable and we refuse to rewrite the contract including the Retail Order's clear exclusion of consequential damages.").

Additionally, this was a commercial transaction between sophisticated parties who had the chance to read and understand the Warranty Registration and is unlike situations of unconscionability. *See*, *e.g.*, *Razor*, 854 N.E. 2d at 623 (the fact that the disclaimer of consequential damages was not provided to the plaintiff at or before the time she signed the purchase contract was a factor in determining whether the contract was unconscionable); *Intrastate Piping*, 733 N.E. 2d at 725–26 (holding that the remedy limitations were not unconscionable because the parties "were sophisticated businesses, capable of protecting their own interests-and appropriately allocating risks-in the bargaining process."); *see also* February 13, 2009 Order, Dkt. 27, at 9 (denying Great West's request to take discovery on whether the Truck and Engine Warranties were unconscionable and ruling that "[b]ecause the transaction at issue was between two business entities, there is no indication that the parties were of unequal bargaining power."). Accordingly, the provision disclaiming consequential and special damages will be upheld and these damages will not be recoverable if Volvo is found to have breached the warranties.

**CONCLUSION AND ORDER**

Volvo's motion for summary judgment is granted with respect to counts I, II, and IV and denied with respect to count III. Should Great West prevail on its breach of warranty claim in count III, it will be precluded from recovering consequential and special damages. This case will be called for a status hearing on March 14, 2013 at 8:30 a.m. The parties are directed to engage in a sincere effort to settle this case and to report the potential for settlement at the next status hearing.

Dated: February 19, 2013                Enter:  _____
                                                JOAN HUMPHREY LEFKOW
                                                United States District Judge