# EXHIBIT A

1

1  IN THE UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF ILLINOIS
2  EASTERN DIVISION

3
   GREAT WEST CASUALTY COMPANY, as      )
4  subrogee of Chicago Logistics, LLC, )
                                        )
5        Plaintiff,                     )
                                        )
6        vs.                            )  No. 08 C 2872
                                        )
7  VOLVO TRUCKS NORTH AMERICA, INC.,    )  Chicago, Illinois
                                        )  September 13, 2012
8        Defendant.                     )  8:30 A.M.

9        TRANSCRIPT OF PROCEEDINGS - Motion
   BEFORE THE HONORABLE JOAN HUMPHREY LEFKOW

10
   APPEARANCES:
11
   For the Plaintiff:     KEATING LAW GROUP LLC
12                        230 West Monroe Street
                          Suite 2221
13                        Chicago, Illinois 60606
                          BY:  MR. PATRICK J. KEATING
14                             MR. ANAMARIA FRANCES COUSINEAU

15
   For the Defendant:     DYKEMA GOSSETT PLLC
16                        10 South Wacker Drive
                          Suite 2300
17                        Chicago, Illinois  60606
                          BY:  MR. STEPHEN MICHAEL MAHIEU
18

19
                PAMELA S. WARREN, CSR, RPR
20                  Official Court Reporter
                 219 South Dearborn Street
21                      Room 1928
                  Chicago, Illinois  60604
22                    (312) 294-8907

23

24

25

2

```
 1          (Proceedings had in open court.)
 2          THE CLERK:  08 C 2872, Great West Casualty versus
 3    Volvo Trucks.
 4          MR. KEATING:  Good morning, your Honor.  Patrick
 5    Keating and Anamaria Cousineau on behalf of the plaintiffs.
 6          THE COURT:  Good morning.
 7          MR. MAHIEU:  Good morning, your Honor.  Stephen Mahieu
 8    on behalf of Volvo Trucks.
 9          THE COURT:  Good morning.
10          MR. MAHIEU:  We're here this morning on our motion for
11    leave to file a motion for summary judgment.  As your Honor
12    likely saw in the motion, we have been laboring under the
13    impression the last five years that Chicago Logistics,
14    plaintiff's subrogor, did not receive notice of the recall.
15    And we just found out last week that they have had notice since
16    the spring of 2006.
17          THE COURT:  All right.  So it sounds to me, if I read
18    this correctly, that you had a witness who denied these things
19    in his deposition and now is repudiating what He said, right?
20          MR. MAHIEU:  Correct.  And I can tell you that the
21    plaintiff has stipulated now that Chicago Logistics received
22    the notice in the spring, and we think that's the only fact
23    that's important here, and all the claims fall as a matter of
24    law.
25          THE COURT:  All right.
```

Case: 1:08-cv-02872 Document #: 162-1 Filed: 01/04/13 Page 24 of 29 PageID #:1514

3

1    MR. KEATING: Your Honor, our position -- this is a

2  strict products liability case. And so if you recall, we were

3  granted leave, about halfway through the case, to include a

4  failure to warn count that referenced federal standards such

5  that they couldn't have even put the truck on the market. So

6  in our view the issue of whether or not we received -- when we

7  received a recall notice -- it was undisputed we have received

8  a second recall notice -- would not go -- if anything, it would

9  be an issue of comparative-type fault under an assumption of

10  risk theory, and there is -- so we don't have any problem with

11  them wanting to deal with this. Obviously it came up late. So

12  we have no problem with the timeliness issue.

13    Our position is that this would be futile at this

14  point, especially given the very late date. We have stipulated

15  to it, but --

16    THE COURT: Well, futile in what? In respect to

17  obviating the need for a trial or futile --

18    MR. KEATING: Correct.

19    THE COURT: -- with respect to your claim for failure

20  to warn?

21    MR. KEATING: No. This would relate to one of their

22  affirmative defenses, but it would not be an affirmative

23  defense that would be dispositive as a matter of law. There

24  would still have to be findings of fact as to whether the

25  wording of the notice gave -- the notice, the recall notice, at

4

1   issue didn't say, don't drive the truck.  It said, if the truck

2   -- if you hear a noise, pull over immediately.

3        The testimony in this case is that that's -- our guy

4   was on THE road, and by the time he was able to pull over, the

5   fire had already started.  So the recall notice doesn't do

6   anything that the Court could decide as a matter of law.

7        THE COURT:  Okay.  Well, I don't need to know all of

8   that, but I need to know what -- first of all, your trial is

9   October 29.  I can't do a motion for summary judgment between

10  now and then.

11       MR. MAHIEU:  Your Honor, several points that I think

12  are necessary to make here.  There is four counts pending.

13  There is strict products liability, failure to warn,

14  negligence, and breach of warranty.

15       THE COURT:  Right.

16       MR. MAHIEU:  As an initial matter, counsel is laboring

17  under the wrong legal assumption that strict products liability

18  is even viable here.  The Illinois Supreme Court has clearly

19  held that when the damage is to the product itself and there is

20  not damage to other property, strict products liability is not

21  available and you're limited to your contractual agreement for

22  recovery.  That wipes out all three tort claims here.  And all

23  that's left is the breach of warranty.

24       We believe that the fact that they received notice of

25  the defect in the spring of 2006 and operated the truck

1 normally for eight months, the witness whose declaration we

2 provided said that they knew of the risk of fire, they didn't

3 tell their truck operators any of -- anything about the recall

4 so they couldn't know whether to check the EGR pipes for

5 problems, they couldn't know whether to listen for certain

6 things. They didn't -- he didn't have -- the driver didn't

7 have knowledge of any of that.

8       THE COURT: All right. So you're saying that this

9 motion for summary judgment would make the case --

10       MR. MAHIEU: Dispositive of all issues --

11       THE COURT: Of all issues.

12       MR. MAHIEU: -- as a matter law.

13       MR. KEATING: And that's where we differ. Obviously

14 we can go through the effort of briefing it all, and maybe we

15 will need to, I don't know.

16       MR. MAHIEU: And I just --

17       THE COURT: Well --

18       MR. MAHIEU: -- the Illinois Supreme Court, the

19 Seventh Circuit have both recognized this.

20       THE COURT: Okay. I'm not as up on product liability

21 laws. I'm sure you are.

22       But if we do this, then there won't be a trial in late

23 October, and it is going to put the case off for a while.

24       MR. MAHIEU: And we understand -- I understand that,

25 your Honor. Our client understands that and believes that

6

1  there will never be a trial.

2      MR. KEATING:  Your Honor, we would like to get this

3  resolved soon.  But if -- but, obviously, because this just

4  came about, we would have no problem with getting on your next

5  available set date.

6      THE COURT:  Okay.  So the motion to file -- the

7  corrected motion to file summary -- motion for summary judgment

8  is granted.

9      And then can you file -- how soon can you file your

10  motion?

11      MR. MAHIEU:  We had asked for seven days, your Honor.

12  If -- if we could have 14, if it is not as big of a rush

13  without the trial going, that would be enough time.

14      THE COURT:  Okay.  Fourteen.

15      And then 28 to respond.

16      Then 14 to reply.

17      And we'll give you exact dates in the minute order.

18      So I'll strike the trial date.  And, I don't know, I

19  mean, maybe we could put it out somewhere in the future.  We'll

20  look in the spring or summer of 2013.

21      THE CLERK:  May 20th.

22      MR. KEATING:  We'll take it.

23      THE COURT:  Okay.  All right.

24      MR. KEATING:  Your Honor, there is a related motion.

25  The original filing of this motion include an unredacted

7

1  declaration that contained some language that we contend was

2  defamatory.  We contacted the clerk's office immediately, and

3  they agreed to seal it but said they can't do that indefinitely

4  without an order from the Court.  So --

5        MR. MAHIEU:  We have no objection to sealing that,

6  your Honor.

7        MR. KEATING:  I don't know if it should be sealed or

8  stricken or how that's logistically handled.

9        THE COURT:  All right.  I'll grant your motion.

10        MR. MAHIEU:  We would object to a protective order

11  barring us from ever using the language.  I don't know that it

12  is -- it is going to be necessary, and I kind of doubt it, but

13  it could go to notice and other issues here so I would hesitate

14  to agree to that portion of it.  But I believe the issue is

15  fully resolved by simply sealing the document.

16        THE COURT:  Well, let's just keep that statement under

17  seal.  And if at some point in the future it needs to be

18  discussed again, we can bring it back.

19        MR. KEATING:  That's fine.

20        THE COURT:  All right.

21        MR. KEATING:  Thank you, your Honor.

22        THE CLERK:  Judge, could we make that May 13th for

23  trial?

24        THE COURT:  May 13th?

25        MR. KEATING:  Yes, Okay.

Case: 1:08-cv-02872 Document #: 162-1 Filed: 01/04/13 Page 29 of 29 PageID #:1519

8

1    THE CLERK:  Okay.

2    MR. MAHIEU:  Thank you.

3    MR. KEATING:  Thank you.

4    (Which concluded the proceedings in the above-entitled

5  matter.)

6                    CERTIFICATE

7    I HEREBY CERTIFY that the foregoing is a true, correct

8  and complete transcript of the proceedings had at the hearing

9  of the aforementioned cause on the day and date hereof.

10

11  /s/ Pamela S. Warren                    October 12, 2012
    Official Court Reporter                        Date
12  United States District Court
    Northern District of Illinois
13  Eastern Division

14

15

16

17

18

19

20

21

22

23

24

25

# **<u>EXHIBIT B</u>**

Case No. 08 C 2872

20297-PJK

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Great West Casualty Company, as )
subrogee of Chicago Logistics, LLC )
)
     Plaintiff, )
)
)
     Case No.:    08 C 2872
vs. )
     Judge Lefkow
)
     Magistrate Judge Denlow
Volvo Trucks North America, Inc. )
)
     Defendant. )

PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET
OF REQUESTS TO ADMIT FACTS

NOW COMES the Plaintiff, Great West Casualty Company ("Great West"), by and
through its attorneys, Patrick J. Keating and Luke P. Sheridan of O'Hagan Spencer LLC and for
its Answers to the Defendant's First Set of Requests to Admit Facts, states as follows:

1.    That Chicago Logistics received a Safety Recall Notice dated February 2006
pertaining to the Exhaust Gas Recirculation (EGR) Cooler Pipe in the Truck, a true and accurate
copy of which is attached hereto as Exhibit A.

ANSWER:    Great West denies that Chicago Logistics received a Safety Recall Notice dated
February 2006.

2.    That the "WHAT YOU SHOULD DO SECTION" of the Safety Recall Notice
dated February 2006 received by Chicago Logistics states:

    You should contact the nearest Volvo Parts and Service Center
    and make an appointment. The Vehicle will be inspected and a
    heat shield will be installed at no charge to you. All Volvo Parts
    and Service Centers have been sent a bulletin covering all the
    details required to perform the safety recall. Volvo Trucks North
    America strongly recommends that you follow the actions stated
    in the precaution section above until the heat shield is installed. If

Case No. 08 C 2872

20297-PJK

your vehicle has the aforementioned condition (pipe separated or broken), <u>you should not operate the vehicle</u> and should contact the Volvo Action Service Support Center at 1-877-800-4945 for further instructions.

ANSWER:    Great West admits the "What you should do section" is stated correctly but denies that Chicago Logistics received a Safety Recall Notice dated February 2006.

3.    That Chicago Logistics did not contact a Volvo Parts and Service Center regarding the EGR Cooler Pipe in the Truck pursuant to the Safety Recall Notice dated February 2006 prior to truck fire complained of in Plaintiff's Complaint.

ANSWER:    Great West admits that Chicago Logistics did not contact a Volvo Parts and Service Center but denies that Chicago Logistics received a Safety Recall Notice dated February 2006.

4.    That Chicago Logistics did not take the Truck into a Volvo Parts and Service Center to have a heat shield installed pursuant to the Safety Recall Notice dated February 2006 prior to the truck fire complained of in Plaintiff's Complaint.

ANSWER:    Great West admits that Chicago Logistics did not take the Truck into a Volvo Parts and Service Center to have a heat shield installed but denies that Chicago Logistics received a Safety Recall Notice dated February 2006.

5.    That Chicago Logistics received a second Safety Recall Notice dated September 2006, pertaining to the Exhaust Recirculation (EGR) Cooler Pipe in the Truck, a true and accurate copy of which is attached hereto as Exhibit B.

ANSWER:    Great West admits that Chicago Logistics received a Safety Recall Notice in mid-October, 2006.

6.    That the second Safety Recall Notice dated September 2006 received by Chicago Logistics states in part:

Dear Volvo Truck Owner:

Case No. 08 C 2872

20297-PJK

> Our records show that you have not had your vehicle repaired. This is a follow-up notice to remind you of the importance of having your vehicle corrected by making an appointment with an authorized Volvo Truck Dealer.

ANSWER:   Great West admits that the Safety Recall Notice dated September 2006 and received in mid-October, 2006 is stated correctly.

7.   That Chicago Logistics did not contact a Volvo Parts and Service Center regarding the EGR Cooler Pipe in the Truck pursuant to the second Safety Recall Notice dated September 2006 prior to the truck fire complained of in Plaintiff's Complaint.

ANSWER:   Great West is without sufficient information to admit or deny the allegations contained in Paragraph 7 of Plaintiff's Request to Admit Facts. Great West has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable Great West to admit of deny the allegations contained in Paragraph 7.

8.   That Chicago Logistics did not take the Truck into a Volvo Parts and Service Center to have a heat shield installed pursuant to the second Safety Recall Notice dated September 2006 prior to the truck fire complained of in Plaintiff's Complaint.

ANSWER:   Great West admits Paragraph 8 of Plaintiff's Request to Admit Facts.

9.   That Chicago Logistics received the Safety Recall Notice dated February 2006 in February 2006.

ANSWER:   Great West denies that Chicago Logistics received a Safety Recall Notice dated February 2006.

10.   That Chicago Logistics received the Safety Recall Notice dated February 2006 in March 2006.

ANSWER:   Great West denies that Chicago Logistics received a Safety Recall Notice dated February 2006.

Case No. 08 C 2872

20297-PJK

11.    That Chicago Logistics received the second Safety Recall Notice dated September 2006 in September 2006.

ANSWER:    Great West denies that Chicago Logistics received a Safety Recall Notice dated September 2006 in September 2006.

12.    That Chicago Logistics received the second Safety Recall Notice dated September 2006 in October 2006.

ANSWER:    Great West admits that Chicago Logistics received a Safety Recall Notice dated September 2006 in October 2006.

13.    That Chicago Logistics took no action pursuant to the Safety Recall Notice dated February 2006 or the second Safety Recall Notice dated September 2006 to prevent the truck fire complained of in the Plaintiff's Complaint.

ANSWER:    Great West admits that Chicago Logistics took no action pursuant to the February 2006 Safety Recall Notice but denies that Chicago Logistics received a Safety Recall Notice dated February 2006.

14.    That Chicago Logistics continued to operate the Truck after receiving the Safety Recall Notice dated February 2006.

ANSWER:    Great West denies that Chicago Logistics received a Safety Recall Notice dated February 2006.

15.    That Chicago Logistics continued to operate the Truck after receiving the second Safety Recall Notice dated September 2006.

ANSWER:    Great West admits that Chicago Logistics continued to operate the Truck after receiving the Safety Recall Notice dated September 2006.

16.    That Chicago Logistics received similar Safety Recall Notices pertaining to the EGR Cooler Pipe in other Volvo trucks owned, leased, or in the possession of Chicago Logistics.

Case No. 08 C 2872

20297-PJK

ANSWER:    Great West objects to this Request to Admit Paragraph 16 as it is not limited in time.

17.    That Chicago Logistics had other Volvo trucks owned, leased, or in its possession repaired prior to November 6, 2006 pursuant to the Safety Recall Notices pertaining to the EGR Cooler Pipe that Chicago Logistics received for those trucks.

ANSWER:    Great West is without sufficient information to admit or deny the allegations contained in Paragraph 17 of Plaintiff's Request to Admit Facts. Great West has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable Great West to admit of deny the allegations contained in Paragraph 17.

18.    That no truck fires occurred in any other Volvo trucks owned, leased, or in the possession of Chicago Logistics that were repaired prior to November 6, 2006 pursuant to Safety Recall Notices received by Chicago Logistics pertaining to the EGR Cooler Pipe in those trucks.

ANSWER:    Great West is without sufficient information to admit or deny the allegations contained in Paragraph 18 of Plaintiff's Request to Admit Facts. Great West has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable Great West to admit of deny the allegations contained in Paragraph 18.

19.    That if Chicago Logistics had the Truck repaired pursuant to the Safety Recall Notice dated February 2006 and the second Safety Recall Notice dated September 2006, the truck fire complained of in Plaintiff's Complaint would not have occurred.

ANSWER:    Great West objects to Request to Admit Paragraph 19 as it calls for speculation.

20.    That on November 6, 2006, Chicago Logistics did not make a pre-trip inspection of the Truck's EGR Cooler Pipe prior to use of the Truck pursuant to the Safety Recall Notice dated February 2006 and the second Safety Recall Notice dated September 2006.

ANSWER:    Great West objects to Request to Admit Paragraph 20 as this Request misstates the language of the referenced documents.

Case No. 08 C 2872

20297-PJK

21.     That prior to the truck fire complained of in Plaintiff's Complaint, Chicago Logistics was aware that the ERG Cooler Pipe in the Truck was cracked.

ANSWER:     Great West denies Paragraph 21 of Plaintiff's Request to Admit.

22.     That prior to the Truck fire complained of in Plaintiff's Complaint, Chicago Logistics was aware that the EGR pipe in the Truck was leaking.

ANSWER:     Great West denies Paragraph 22 of Plaintiff's Request to Admit.

23.     That the truck fire complained of in Plaintiff's Complaint occurred on November 6, 2006.

ANSWER:     Great West admits Paragraph 23 of Plaintiff's Request to Admit.

24.     That at the time of the truck fire complained of in Plaintiff's Complaint, the Truck was being operated by Chicago Logistics.

ANSWER:     Great West admits Paragraph 24 of Plaintiff's Request to Admit.

25.     That at the time of the truck fire complained of in Plaintiff's Complaint, the Truck was pulling a load.

ANSWER:     Great West admits Paragraph 25 of Plaintiff's Request to Admit.

Dated:     January 27, 2009

Respectfully Submitted:

O'Hagan Spencer LLC

By: _____
Counsel for Great West Casualty Company

Page 6 of 8

Case No. 08 C 2872

20297-PJK

Patrick J. Keating (ARDC No. 6211380)
Luke P. Sheridan (ARDC No. 6210035)
O'Hagan Spencer LLC
One E. Wacker Drive, Suite 3400
Chicago, Illinois 60601
312-422-6100 – Phone
312-422-6110 – Fax

Case No. 08 C 2872

20297-PJK

CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing document was sent via

Federal Express Next Day Air, prepaid, and facsimile on this 27th day of January, 2009, to:

Charles A. LeMoine
Dykema Gossett PLLC
10 S. Wacker Drive
Suite 2300
Chicago, IL 60606
866-546-2547 – Fax

By: _____
Attorneys for Plaintiff, Great West Casualty
Company

Patrick J. Keating (ARDC No. 6211380)
Luke P. Sheridan (ARDC No. 6210035)
O'Hagan Spencer LLC
One E. Wacker Drive, Suite 3400
Chicago, IL 60601
312-422-6100 – Phone
312-422-6110 – Fax

# EXHIBIT C

Great West Casualty Company, et al. v. Volvo Trucks North America, Inc.          08 CV 2872
                          Lorenzo Starks                                          6/19/2009

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


GREAT WEST CASUALTY COMPANY,        )

as subrogee of CHICAGO              )

LOGISTICS, LLC,                     )

            Plaintiff,              )

                                    ) No. 08 CV 2872
       vs.                          )

VOLVO TRUCKS NORTH AMERICA,         )

INC.,                               )

            Defendant.              )


     The deposition of LORENZO STARKS, called
for examination, taken pursuant to the Federal Rules
of Civil Procedure of the United States District
Courts pertaining to the taking of depositions,
taken before JENNIFER L. WIESCH, CSR No. 84-4528, a
Notary Public within and for the County of Will,
State of Illinois, and a Certified Shorthand
Reporter of said state, at Suite 300, 4200 Commerce
Court, Lisle, Illinois, on the 19th day of June,
A.D. 2009, at 2:04 p.m.

Great West Casualty Company, et al. v. Volvo Trucks North America, Inc.    08 CV 2872
Lorenzo Starks    6/19/2009

Page 96

1     Q.    What were you hauling when you had 501

2 and you heard the noise?

3     A.    Flat sheets of steel.

4     Q.    Do you know how much it weighed?

5     A.    Probably around 45,000.

6     Q.    What gear were you in on 508 when you

7 heard the noise?

8     A.    I don't know.

9     Q.    You were traveling at what rate of speed?

10     A.    Driving about 50 miles an hour.

11     Q.    What rate of speed were you going when

12 you heard it on 501?

13     A.    I was going about 60, 65.

14     Q.    What was the traffic like on -- when you

15 heard the noise on 508 on I-55, what was --

16     A.    It was --

17     Q.    -- the traffic --

18     A.    Traffic was solid.

19     Q.    When you heard the noise, were you

20 accelerating, decelerating, do you remember?

21     A.    I don't remember.

22     Q.    Have you ever heard that noise on any

23 other truck?

24     A.    No.

25     Q.    Did you do a pretrip inspection on 508 on

Great West Casualty Company, et al. v. Volvo Trucks North America, Inc.      08 CV 2872
                              Lorenzo Starks                                    6/19/2009

Page 97

```
 1    November 6th?
 2          A.   Yes, I did.
 3          Q.   You did generally what you usually would
 4    do?
 5          A.   What I do -- normally do.
 6          Q.   So when you did -- on 501, the day that
 7    you heard the noise, did you do a pretrip
 8    inspection?
 9          A.   Yes.
10          Q.   And you did what you normally did?
11          A.   Exactly.
12          Q.   You didn't check -- you didn't
13    specifically check the EGR pipe on 501?
14          A.   Right.
15          Q.   I'm right?
16          A.   You're right.
17          Q.   Even as of -- even as of two weeks later
18    when you heard the noise on 501, you still didn't
19    know about the --
20          A.   No.
21          Q.   -- about the issue with the EGR, correct?
22          A.   No.
23          Q.   I'm correct?
24          A.   Yep.  I didn't know about it.
25          Q.   Right.  And you still didn't know about
```

Case: 1:08-cv-02872 Document #: 149-1 Filed: 09/27/12 Page 77 of 78 PageID #:933

Great West Casualty Company, et al. v. Volvo Trucks North America, Inc.          08 CV 2872
Lorenzo Starks                                                                   6/19/2009

Page 98

1   any recall as of two weeks later when you heard the
2   noise on 501?
3          A.   No, I didn't.  They wouldn't tell us
4   about a recall.  They wouldn't tell us about it.
5   We're just drivers.  They just tell us what they
6   want us to know.
7          Q.   Wouldn't you like to know if there was a
8   safety recall on a truck you're driving?
9          A.   I would like to know.
10         Q.   After you found out about the recall,
11  with respect to 501, did you ever say to anybody at
12  Chicago Logistics --
13         A.   No.
14         Q.   -- "Hey, why didn't you tell me about
15  this"?
16         A.   No.
17         Q.   Did anybody say, "Hey, we're sorry we
18  didn't tell you about it"?
19         A.   No.
20         Q.   How long did it take before the -- was
21  the State Trooper the first one to get there on 508
22  when the fire happened, or the fire?
23         A.   Yeah, State Trooper was the first one.
24         Q.   The State Trooper came out and you talked
25  to him?

Great West Casualty Company, et al. v. Volvo Trucks North America, Inc.          08 CV 2872
Lorenzo Starks                                                                  6/19/2009

Page 108

```
 1    STATE OF ILLINOIS )
 2                      )  SS:
 3    COUNTY OF W I L L )
 4
 5
 6             I, JENNIFER L. WIESCH, a Notary Public
 7    within and for the County of Will, State of
 8    Illinois, and a Certified Shorthand Reporter of said
 9    state, do hereby certify:
10             That previous to the commencement of the
11    examination of the witness, the witness was duly
12    sworn to testify the whole truth concerning the
13    matters herein;
14             That the foregoing deposition transcript
15    was reported stenographically by me, was thereafter
16    reduced to typewriting under my personal direction
17    and constitutes a true record of the testimony given
18    and the proceedings had;
19             That the said deposition was taken before
20    me at the time and place specified;
21             That I am not a relative or employee or
22    attorney or counsel, nor a relative or employee of
23    such attorney or counsel for any of the parties
24    hereto, nor interested directly or indirectly in the
25    outcome of this action.
```

Reported By: Jennifer L. Wiesch, CSR                    www.fastpace.com
Fast Pace -2425 W. Loop South, Suite 200, Houston, TX 77027        800.880.1035