```
         IN THE UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION


GREAT WEST CASUALTY COMPANY, as     )
subrogee of Chicago Logistics, LLC, )
                                    )
           Plaintiff,               )
                                    )
        vs.                         ) No. 08 C 2872
                                    )
VOLVO TRUCKS NORTH AMERICA, INC.,   ) Chicago, Illinois
                                    ) September 13, 2012
           Defendant.               ) 8:30 A.M.

         TRANSCRIPT OF PROCEEDINGS - Motion
    BEFORE THE HONORABLE JOAN HUMPHREY LEFKOW

APPEARANCES:

For the Plaintiff:     KEATING LAW GROUP LLC
                       230 West Monroe Street
                       Suite 2221
                       Chicago, Illinois  60606
                       BY:  MR. PATRICK J. KEATING
                            MR. ANAMARIA FRANCES COUSINEAU


For the Defendant:     DYKEMA GOSSETT PLLC
                       10 South Wacker Drive
                       Suite 2300
                       Chicago, Illinois  60606
                       BY:  MR. STEPHEN MICHAEL MAHIEU



             PAMELA S. WARREN, CSR, RPR
                Official Court Reporter
             219 South Dearborn Street
                     Room 1928
               Chicago, Illinois  60604
                  (312) 294-8907
```

1    (Proceedings had in open court.)
2         THE CLERK:  08 C 2872, Great West Casualty versus
3    Volvo Trucks.
4         MR. KEATING:  Good morning, your Honor.  Patrick
5    Keating and Anamaria Cousineau on behalf of the plaintiffs.
6         THE COURT:  Good morning.
7         MR. MAHIEU:  Good morning, your Honor.  Stephen Mahieu
8    on behalf of Volvo Trucks.
9         THE COURT:  Good morning.
10        MR. MAHIEU:  We're here this morning on our motion for
11   leave to file a motion for summary judgment.  As your Honor
12   likely saw in the motion, we have been laboring under the
13   impression the last five years that Chicago Logistics,
14   plaintiff's subrogor, did not receive notice of the recall.
15   And we just found out last week that they have had notice since
16   the spring of 2006.
17        THE COURT:  All right.  So it sounds to me, if I read
18   this correctly, that you had a witness who denied these things
19   in his deposition and now is repudiating what He said, right?
20        MR. MAHIEU:  Correct.  And I can tell you that the
21   plaintiff has stipulated now that Chicago Logistics received
22   the notice in the spring, and we think that's the only fact
23   that's important here, and all the claims fall as a matter of
24   law.
25        THE COURT:  All right.

1            MR. KEATING:  Your Honor, our position -- this is a
2    strict products liability case.  And so if you recall, we were
3    granted leave, about halfway through the case, to include a
4    failure to warn count that referenced federal standards such
5    that they couldn't have even put the truck on the market.  So
6    in our view the issue of whether or not we received -- when we
7    received a recall notice -- it was undisputed we have received
8    a second recall notice -- would not go -- if anything, it would
9    be an issue of comparative-type fault under an assumption of
10   risk theory, and there is -- so we don't have any problem with
11   them wanting to deal with this.  Obviously it came up late.  So
12   we have no problem with the timeliness issue.
13           Our position is that this would be futile at this
14   point, especially given the very late date.  We have stipulated
15   to it, but --
16           THE COURT:  Well, futile in what?  In respect to
17   obviating the need for a trial or futile --
18           MR. KEATING:  Correct.
19           THE COURT:  -- with respect to your claim for failure
20   to warn?
21           MR. KEATING:  No.  This would relate to one of their
22   affirmative defenses, but it would not be an affirmative
23   defense that would be dispositive as a matter of law.  There
24   would still have to be findings of fact as to whether the
25   wording of the notice gave -- the notice, the recall notice, at

1   issue didn't say, don't drive the truck.  It said, if the truck
2   -- if you hear a noise, pull over immediately.
3           The testimony in this case is that that's -- our guy
4   was on THE road, and by the time he was able to pull over, the
5   fire had already started.  So the recall notice doesn't do
6   anything that the Court could decide as a matter of law.
7           THE COURT:  Okay.  Well, I don't need to know all of
8   that, but I need to know what -- first of all, your trial is
9   October 29.  I can't do a motion for summary judgment between
10  now and then.
11          MR. MAHIEU:  Your Honor, several points that I think
12  are necessary to make here.  There is four counts pending.
13  There is strict products liability, failure to warn,
14  negligence, and breach of warranty.
15          THE COURT:  Right.
16          MR. MAHIEU:  As an initial matter, counsel is laboring
17  under the wrong legal assumption that strict products liability
18  is even viable here.  The Illinois Supreme Court has clearly
19  held that when the damage is to the product itself and there is
20  not damage to other property, strict products liability is not
21  available and you're limited to your contractual agreement for
22  recovery.  That wipes out all three tort claims here.  And all
23  that's left is the breach of warranty.
24          We believe that the fact that they received notice of
25  the defect in the spring of 2006 and operated the truck

1  normally for eight months, the witness whose declaration we
2  provided said that they knew of the risk of fire, they didn't
3  tell their truck operators any of -- anything about the recall
4  so they couldn't know whether to check the EGR pipes for
5  problems, they couldn't know whether to listen for certain
6  things.  They didn't -- he didn't have -- the driver didn't
7  have knowledge of any of that.
8          THE COURT:  All right.  So you're saying that this
9  motion for summary judgment would make the case --
10         MR. MAHIEU:  Dispositive of all issues --
11         THE COURT:  Of all issues.
12         MR. MAHIEU:  -- as a matter law.
13         MR. KEATING:  And that's where we differ.  Obviously
14 we can go through the effort of briefing it all, and maybe we
15 will need to, I don't know.
16         MR. MAHIEU:  And I just --
17         THE COURT:  Well --
18         MR. MAHIEU:  -- the Illinois Supreme Court, the
19 Seventh Circuit have both recognized this.
20         THE COURT:  Okay.  I'm not as up on product liability
21 laws.  I'm sure you are.
22         But if we do this, then there won't be a trial in late
23 October, and it is going to put the case off for a while.
24         MR. MAHIEU:  And we understand -- I understand that,
25 your Honor.  Our client understands that and believes that

1  there will never be a trial.
2           MR. KEATING: Your Honor, we would like to get this
3  resolved soon. But if -- but, obviously, because this just
4  came about, we would have no problem with getting on your next
5  available set date.
6           THE COURT: Okay. So the motion to file -- the
7  corrected motion to file summary -- motion for summary judgment
8  is granted.
9           And then can you file -- how soon can you file your
10 motion?
11          MR. MAHIEU: We had asked for seven days, your Honor.
12 If -- if we could have 14, if it is not as big of a rush
13 without the trial going, that would be enough time.
14          THE COURT: Okay. Fourteen.
15          And then 28 to respond.
16          Then 14 to reply.
17          And we'll give you exact dates in the minute order.
18          So I'll strike the trial date. And, I don't know, I
19 mean, maybe we could put it out somewhere in the future. We'll
20 look in the spring or summer of 2013.
21          THE CLERK: May 20th.
22          MR. KEATING: We'll take it.
23          THE COURT: Okay. All right.
24          MR. KEATING: Your Honor, there is a related motion.
25 The original filing of this motion include an unredacted

1  declaration that contained some language that we contend was
2  defamatory.  We contacted the clerk's office immediately, and
3  they agreed to seal it but said they can't do that indefinitely
4  without an order from the Court.  So --
5              MR. MAHIEU:  We have no objection to sealing that,
6  your Honor.
7              MR. KEATING:  I don't know if it should be sealed or
8  stricken or how that's logistically handled.
9              THE COURT:  All right.  I'll grant your motion.
10             MR. MAHIEU:  We would object to a protective order
11 barring us from ever using the language.  I don't know that it
12 is -- it is going to be necessary, and I kind of doubt it, but
13 it could go to notice and other issues here so I would hesitate
14 to agree to that portion of it.  But I believe the issue is
15 fully resolved by simply sealing the document.
16             THE COURT:  Well, let's just keep that statement under
17 seal.  And if at some point in the future it needs to be
18 discussed again, we can bring it back.
19             MR. KEATING:  That's fine.
20             THE COURT:  All right.
21             MR. KEATING:  Thank you, your Honor.
22             THE CLERK:  Judge, could we make that May 13th for
23 trial?
24             THE COURT:  May 13th?
25             MR. KEATING:  Yes, Okay.

1         THE CLERK:  Okay.

2         MR. MAHIEU:  Thank you.

3         MR. KEATING:  Thank you.

4     (Which concluded the proceedings in the above-entitled

5  matter.)

6                          CERTIFICATE

7         I HEREBY CERTIFY that the foregoing is a true, correct

8  and complete transcript of the proceedings had at the hearing

9  of the aforementioned cause on the day and date hereof.

10

11  */s/Pamela S. Warren*                       October 12, 2012
    Official Court Reporter                         Date
12  United States District Court
    Northern District of Illinois
13  Eastern Division